Schweitzer, J.
This is a motion for a writ of error coram nobis attacking a conviction by plea of the crime of burglary in the third degree, for which the defendant was sentenced by the late Honorable Otto A. Rosalsky, of this court, on October 30, 1925, to a term of five years in State prison. The defendant is presently incarcerated for a subsequent crime. The records of the Court of General Sessions contain three indictments charg *79 ing the defendant variously with the crimes of burglary in the third degree, grand larceny in the first degree, criminally receiving stolen property after prior conviction, and feloniously carrying and possessing an explosive substance. All three indictments contain the name of Joseph Shalleck, Esq., indorsed as counsel.
The contentions advanced in this defendant’s petition sworn to July 8,1954, and in his amended petition dated April 5, 1955, were in substance that he was not represented by counsel at the time of the interposition of the aforesaid plea of guilty or on the date of sentence; that in neither instance was he advised of his rights thereto; and that he never waived such rights. Belying upon the minutes of the plea which indicate that the court was advised during the course of the plea that the defendant’s counsel was in another part, the moving papers averred further that the court nevertheless refused to grant a postponement. During the course of a hearing subsequently ordered, the defendant while testifying advanced the additional allegation that his plea of guilty was induced by a promise of the assistant district attorney in charge of the case that the defendant would receive a sentence shorter than the one actually imposed. This latter ground was thereafter incorporated in the amended petition dated April 5, 1955.
The indictments reveal that after ten appearances on the trial calendar, the case came on for trial for the eleventh time on October 20, 1925, before Judge Bosalsky. An examination of the minutes of that day indicates that after the clerk had asked the defendant whether he withdrew his plea of ‘ not guilty ” to the indictments pending and whether he pleaded “ guilty ” to the crime of burglary in the third degree to cover all three indictments, and after the defendant answered “ yes,” the following colloquy occurred: “ The Court: (to the defendant) State what you did in this case? The Defendant: Why I come on a charge of burglary and everything else: that is in with the bargain. I might as well take it. I do not want to get the full benefit of a conviction.”
The minutes further reveal that the court inquired as to the whereabouts of the defendant’s lawyer, Mr. Shalleck, and the defendant answered, ‘ ‘ I do not know. He was supposed to be here.” Thereupon, the assistant district attorney said, “ Mr. Shalleck was here a couple of times. He is trying a case in Part IV.” Significantly lacking in the minutes is there any reference to any request made by the defendant or by anyone *80 in his behalf for an adjournment or for an opportunity to confer with his counsel with respect to the change in his plea. Nor is there even the remotest suggestion that an adjournment for this purpose would not be given. This is in sharp contradistinction to the statements in the defendant’s petition and to his testimony at the hearing that the court denied an application for a postponement when his counsel failed to be present. The judgment of conviction by plea, like every other judgment, carries with it a presumption of regularity (People v. Oddo, 283 App. Div. 497; Johnson v. Zerbst, 304 U. S. 458). The burden is always on the defendant to show by clear, credible and convincing proof that his statutory and constitutional rights were denied to him. The requirements of due process are guaranteed by the Fourteenth Amendment of the United States Constitution and its counterpart contained in section 6 of article I of the New York State Constitution. In addition, section 308 of the New York Code of Criminal Procedure provides in substance that if the defendant appears on arraignment for pleading without counsel he must be asked if he desires the aid of counsel and if he does, the court must assign counsel. No such issue as failure of compliance with this section is involved here because the defendant was represented by counsel of his own choosing when he was arraigned and pleaded not guilty to the three indictments.
Counsel for the defendant on this motion apparently relies heavily on the proposition that the mere physical absence of a defendant’s counsel at the time of the entry of a plea of guilty vitiates the conviction. The established law is to the contrary (People v. Phillips, 301 N. Y. 733; People ex rel. Harrington v. Martin, 263 App. Div. 922; People v. Palmer, 296 N. Y. 324). Nor does there appear to be any absolute requirement, in the statutes or available cases, that the court make the same scrupulous inquiry at every stage of a criminal proceeding subsequent to the initial arraignment of the defendant’s desire for the aid of counsel (see People v. Begue, 143 N. Y. S. 2d 474). This does not mean that it would not be the better and more preferable practice to do so. Neither does it mean that a defendant may be deprived at any stage of a criminal proceeding of his right to the physical presence and aid of his lawyer if he desires it. But equally true is the fact that he may waive such right, either expressly or by conduct indicating that he had full knowledge of his right to the physical presence and aid of his counsel and that, in spite of this, he abandoned it. To constitute *81 this waiver it must be established that he acted competently, intelligently and voluntarily (Matter of Bojinoff v. People, 299 N. Y. 145; Johnson v. Zerbst, supra).
In reaching a determination as to whether the instant defendant waived such right, it is incumbent upon the court to examine all of the circumstances surrounding the taking of the plea of guilt. Circumstances which would commend themselves to this inquiry would be the age of the defendant; his familiarity with criminal procedure by virtue of his past conduct; the seriousness of the charges; the range of allowable punishment on such plea; and, any other factor which might have any relevant bearing on the defendant’s comprehension of the proceedings.
At the time of the taking of this plea, the defendant was about twenty-nine years of age. He was not a novice to the criminal courts, having had at least three prior encounters, each resulting in a conviction; to wit: in 1917 he pleaded guilty to petit larceny in New York County and was sentenced to the penitentiary; in 1918 he was convicted of larceny in Pennsylvania and sentenced to Huntington State Reformatory; in 1920 he was convicted after trial of robbery in Pennsylvania and sentenced to not less than three years nor more than five years in State’s Prison.
Reference to the defendant’s conflicts with the criminal law prior to the 1925 conviction is not intended to affect the basic proposition that the most depraved criminal is entitled to the meticulous protection of his statutory and constitutional rights. Rather, it is adverted to only insofar as it may have any bearing on the defendant’s competent, voluntary and intelligent waiver.
It is of further importance to note that the defendant stood charged on three indictments containing a multitude of serious crimes on which, if convicted, he faced almost a lifetime in prison. Instead, he chose to plead to one indictment to cover the consequences of all three indictments. Such choice, according to the defendant’s own testimony at the hearing, was the result of a number of conferences had between the defendant and the assistant district attorney in charge. The inevitable inference is present, especially after perusal of all of the available stenographic minutes in connection with the 1925 proceedings, that defendant’s counsel either took part directly in these conferences or was made aware of them before the plea was ever taken — despite the defendant’s testimony to the contrary, which this court disbelieves. The colloquy that ensued at the *82 time of taking of the plea indicates that the choice was the result of a cool-headed and deliberate mind and represented an informed and self-determined choice of pleading guilty rather than risk trial and more serious conviction. The defendant himself referred to it as a “ bargain,” and a “ bargain ” indeed it was. As pointed out earlier, the record makes no reference to any request by this defendant or by anyone else for the physical presence or the aid of his counsel at the time of taking of the plea and I place no credence whatever in the defendant’s bald, unsupported assertions to the contrary made some thirty years later.
This court takes judicial notice of the ability and competence in the field of criminal law of Joseph Shalleck, the defendant’s counsel of record. He appeared with the defendant more than once prior to the actual entry of the guilty plea. This makes it further clear to this court that at the time of the taking of the plea, the defendant knew that he had the alternative of going to trial with able counsel of his own choice. This court cannot close its eyes to the not infrequent practice of attorneys advising their clients who desire to plead guilty to throw themselves on the mercy of the court without the presence of counsel, believing that clemency in greater degree would then be extended — and the reliance in the brief submitted by defendant’s present counsel, on Mr. Shalleck’s practice of never pleading a man guilty fortifies this view.
From all of the above, I conclude that the defendant waived whatever right he may have had to the physical presence of counsel on the day the plea of guilty was entered, and that such waiver was made advisedly, intelligently and voluntarily.
Ten days later, on October 30,1925, sentence was pronounced, and the defendant’s counsel, Mr. Shalleck, was again absent. During the course of the proceeding the court assigned counsel to the defendant. The sentencing minutes do not reveal that this defendant made any application to withdraw his plea of guilty theretofore interposed (Code Grim. Pro., § 466) nor did he make any motion in arrest of judgment (Code Grim. Pro., § 467).
Here again the sentencing minutes, fortunately available, fail to reveal that any application was made to adjourn the sentence for the purpose of having the physical presence or aid of Mr. Shalleck. This court is satisfied that the defendant had ample opportunity between the pleading date and the sentencing date to confer with his own counsel. In any event, the physical *83 absence of counsel for the defendant at the time of sentence forms no basis for relief herein (People v. De Maio, 303 N. Y. 939; People v. Hasenstab, 283 App. Div. 433).
The court places no credence in defendant’s assertions that, despite efforts by the defendant, Mr. Shalleck failed to appear for, or consult with him after the plea because he was irritated after hearing that the defendant had pleaded guilty. His assertions of abandonment by Mr. Shalleck cannot be reconciled with the fact that the very next time this defendant came into conflict with the law, in 1929, at which time he was indicted for burglary again, he went to trial with the firm of Shalleck & Shalleck as his retained counsel. Moreover, apart from the defendant’s extensive criminal record to date, this court is convinced, after listening to and observing him, that his testimony is not to be believed.
The defendant makes the further belated contention of a promise by the assistant district attorney of a more lenient sentence. I place no credence whatsoever in the defendant’s testimony on this score. Furthermore, it does not appear that such claim furnishes any basis for relief herein (People v. De Maio, supra).
On the overwhelming weight of the credible evidence and documentary proof, this court finds that the defendant has failed to rebut the presumption of regularity of the conviction.
Proceedings of the instant character, designed as they are for the protection and preservation of constitutionally guaranteed individual rights, must receive the most careful judicial examination. Equally important, however, for the protection of society as a whole, is the concomitant obligation to protect the judicial processes against the making of unwarranted attacks. The instant case presents an example of such indefensible assault. The guaranty of due process contained in the Constitutions of the United States and of the State of New York sets forth a broad concept of justice and fair play. Examining the record in the instant case and after conducting a full hearing with that in mind, it cannot be said that the defendant was in any respect denied his statutory and constitutional rights.
The motion is in all respects denied.
The District Attorney is directed to enter an order in conformance with the decision herein and to forward a copy of said order to the defendant.