THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* EDWARD A. BOEHM and FRITZ BOEHM, Appellants.

Argued October 3, 1955; decided December 1, 1955.

*William H. McKeon* for appellants. The court below erred in saying that defendants failed to produce substantial and credible evidence sufficient to overcome the presumption of regu-

larity. (*Matter of Bojinoff* v. *People,* 299 N. Y. 145; *Johnson* v. *Zerbst,* 304 U. S. 458; *People* v. *Richetti,* 302 N. Y. 290; *Rice* v. *Olson,* 324 U. S. 786; *Von Moltke* v. *Gillies,* 332 U. S. 708.)

*John F. Dwyer, District Attorney* (*Robert A. Burrell* of counsel), for respondent. I. The People concede that there is nothing in the records of the trial court to indicate whether or not defendants were advised of their right to counsel. (*People* v. *Lake,* 190 Misc. 794.) II. The presumption of regularity which attends a court of record placed upon defendants upon the hearing the burden of overcoming that presumption by a preponderance of the credible evidence. (*Hawk* v. *Olson,* 326 U. S. 271; *Walker* v. *Johnston,* 312 U. S. 275; *Johnson* v. *Zerbst,* 304 U. S. 458; *People* v. *Varelli,* 277 App. Div. 887, 302 N. Y. 641; *People* v. *Barber,* 276 App. Div. 1040; *People ex rel. Asaro* v. *Morhous,* 268 App. Div. 1016.) III. Upon the hearing, defendants failed completely to sustain the truth of the allegations in their petition by a preponderance of the credible proof.

VAN VOORHIS, J. The appellants, Edward A. Boehm and Fritz Boehm, were jointly indicted on the 18th day of September, 1931. The indictment charged attempted robbery in the first degree in three counts. Upon this indictment, Fritz Boehm was arraigned on September 21, 1931, in the Supreme Court, Erie County, and entered a plea of guilty to the indictment. On October 2, 1931, he was sentenced to Auburn State Prison for from twelve and one-half to twenty-five years, plus five years for having a revolver in his possession. Edward A. Boehm was arraigned in the same court on November 10, 1931, pleaded guilty and was sentenced to Auburn State Prison for from twelve and one-half to twenty-five years, plus five years for having a revolver in his possession.

In the moving papers jointly verified by appellants on January 12, 1954, they applied for a writ of error *coram nobis,* seeking to vacate these convictions and sentences. They alleged in their petition that at the times of their arraignments they were not advised of their right to counsel, that they were not in fact represented by counsel, and, further, that they did not then read, write, or comprehend English. The writ was returnable on January 25, 1954, and the proceeding was adjourned until January 28, 1954, on which

date a hearing was had before Justice FISHER, the appellants being present in person and represented by Edward K. O'Shea, Esq., their assigned counsel.

Upon the hearing, both appellants testified as witnesses in their own behalfs. On the 18th day of March, 1954, Justice FISHER issued a memorandum decision, holding that the defendants' motion to have their convictions and sentences set aside should be granted, and that they should be rearraigned on the original indictment. An order was entered upon this decision, from which the People appealed to the Appellate Division, Fourth Department.

Pending that appeal and on April 30, 1954, the defendants were brought before Justice MUNSON of the Supreme Court, to be rearraigned upon the indictment, in compliance with Justice FISHER's order of April 26, 1954. Both defendants were present in person and with their counsel, Edward K. O'Shea, who waived the reading of the indictment, whereupon Justice MUNSON advised the defendants of their right to counsel, inquired of defendants if they understood the English language, to which they both replied, " Yes ". Whereupon both defendants pleaded not guilty and were ordered by Justice MUNSON to be returned to Auburn State Prison, pending the decision of the Appellate Division, Fourth Department, on the People's appeal herein.

Thereafter, and on November 9, 1954, the said appeal was argued before the Supreme Court, Appellate Division, Fourth Department, defendants-appellants being represented by their assigned counsel. The Appellate Division unanimously reversed the order appealed from on the law and the facts and dismissed defendants' writ of error *coram nobis*.

The defendants, upon application, were granted leave to appeal to the Court of Appeals, and were subsequently granted leave to have their appeal heard upon the original record and typewritten briefs, and other counsel assigned. This appeal is now before us.

The gist of the testimony by these brothers is that they were born in Rosenberg, Germany, in 1905 and 1907; that they came to the United States in 1922; that on September 21, 1931, and on November 10, 1931, when Fritz and Edward Boehm respec-

tively pleaded guilty in Erie County, they understood English imperfectly. Fritz Boehm testified that no attorney represented him when he was arraigned; that he did not understand what was going on; that no interpreter was present in the court room; that he did not understand what the Judge said to him; that the indictment was not read to him, and that he did not know for what purpose he was in court and does not recall how he pleaded to the indictment. He testified that he did not recall being advised of his right to counsel or any of the proceedings that occurred that day. Edward Boehm testified that he had copies of the original arraignment and the original minutes sent to him, but never was in the courtroom; that the Sheriff brought him to the door and told him to wait there and then asked if he wanted to go with his brother, which he said that he did; that nobody read any indictment to him and, to the best of his recollection, that he never went before the Justice, following which he testified that no one acted as interpreter, and that he spoke about as much English as his brother. He testified in answer to questioning by the court in the *coram nobis* proceeding.

" By the Court: Q. How about English could you understand at that time? A. About the same as my brother; a few words, just local words, every-day, just around. By Mr. O'Shea: Q. Just words that would give you the necessities of life and get you by; is that right? A. Yes."

In an affidavit, Edward Boehm said that he was brought into the courtroom, arraigned and pleaded guilty.

The People called the deputy clerk, Erie County, who had been assigned to the criminal part of the Supreme Court with the late Justice NORTON and Justice LYTLE, before whom these men had been arraigned and by whom they were sentenced. He testified that he was well acquainted with both of these Justices, that they both consistently advised defendants who appeared before them that they had a right to counsel at all stages of the proceedings in court, that it was the invariable custom in holding court, whenever a person appeared who could not speak or understand English, to produce an interpreter in the language which the defendant spoke, and that this never failed to occur in his recollection. Justice NORTON is deceased and Justice LYTLE was unavailable, having retired and being in North Carolina.

Justice FISHER, in his memorandum of decision, noted the lack of schooling and intelligence of these men, and commented that from the time of their arrival in the country in 1922 until September, 1931, they worked as hired hands at different ranches in the west and southwest, tending sheep and cattle and doing farm chores; that they acquired little knowledge of the English language; that their mental ages were low; that they were serving long sentences with maximum expiration dates in 1968, and Justice FISHER concluded: " It is inconceivable that with that background and without counsel they had sufficient comprehension of the situation to enable them, for instance, to waive the statutory period before sentencing, to say nothing about being able to comprehend the seriousness of a charge they were pleading to or an understanding of their rights to be represented by an attorney."

The Appellate Division, Fourth Department, dismissed the writ with these comments: " We are unable to agree with the Special Term that these defendants at the time of their conviction did not comprehend what they were charged with and did not understand their right to counsel. They had been in this country for nine years. In 1931, Fritz Boehm was twenty-four years old and his brother, Edward twenty-six. They had worked in various parts of the country. It is beyond belief that they did not understand what was said to them. It is significant that no interpreter was employed by the court. The Special Term made use of certain probation reports which were not received in evidence. Such reports were somewhat irrelevant to the issue. One of the reports was delivered to us and we have felt justified in examining it, since it was considered by the Special Term. It indicates that the attempted holdup by these two men was by use of a stolen automobile and that they used their guns. One victim was shot four times. The other was more fortunate, as the bullet passed through his hat. It can hardly be said that they did not know what they were in court for or that they did not comprehend the seriousness of the charges against them."

Although the records of 1931 do not show that these men were informed of their right to counsel at each and every stage of the proceedings, that was twenty-four years ago, at a time when it was apparently not customary to enter such recitals in

the Clerk's records of the Supreme Court, Erie County, and the Appellate Division has held, in effect, that their testimony lacks credibility to overcome the presumption of regularity.

We are not prepared to say that this conclusion is wrong. The mental ages of these men were not shown to be such as to preclude their understanding that they were being charged with robbery, first degree, and that they were entitled to counsel if they so desired. The question treated in the dissenting opinion is not presented by the record as we read it. A 1931 probation report, found in the files, recites that a psychiatrist's examination of Fritz Boehm indicated that he was a moron with the mentality of a five-year-old child; the report contains no evaluation of Edward Boehm's mentality. A report of the Department of Correction states that on October 22, 1953, when these men were transferred from Napanoch to Auburn Prison, both were rated as '' too high grade for mental defective institution ''; that Fritz Boehm had a mental age of ten years and eight months, and Edward of eleven years, one month. The average adult is supposed to have a mental age of about fourteen years. It is common knowledge that these ratings, if correctly taken, would vary slightly if at all, after persons reach the age which these men had attained when they were sentenced in 1931. If the records of the Department of Correction are correct for 1953, the measurement of Fritz Boehm's intelligence appearing in the probation report in 1931, would seem to have been wrong. In any event, their sentences should not be vacated now upon an ex parte statement reported to have been made by a psychiatrist in the probation report of 1931. There is nothing to show that the mental condition of these men, whatever it was, was not before the court when they were arraigned and sentenced, and the presumption of regularity which pertains to the record imports that they were found by the Justices who accepted their pleas and sentenced them to have been of sufficient mental capacity to understand the proceedings and intelligently to waive their right to counsel.

If either of the defendants was a moron with a mental age so low as to render him incapable of understanding the arraignment proceedings or of intelligently waiving his right to counsel or of representing himself adequately, he would be entitled to a writ of error *coram nobis* vacating his 1931 judgment of conviction. Neither defendant sought a vacatur of his conviction because of

any alleged mental incapacity, however, and the court, in granting the *coram nobis* application, did not rely upon any such weakness of intellect but upon other facts, such as the defendants' lack of schooling and their unfamiliarity with the English language.

Our present disposition does not foreclose the making of another *coram nobis* application. (See, e.g., *Matter of Bojinoff* v. *People,* 299 N. Y. 145, 151; *People* v. *Martine,* 303 N. Y. 789). If either defendant actually does claim that in 1931 he lacked sufficient intelligence or mental capacity to understand the trial court's monition that he was entitled to an attorney, he is free to file a further petition based upon such a claim. However, as already indicated, on the present record, the Appellate Division was fully warranted in reaching the conclusion it did and in dismissing the petition of each defendant.

The order of the Appellate Division is affirmed.

DESMOND, J. (dissenting). Official documents, the accuracy of which is not contested, show conclusively that in 1931 when each of these brothers pleaded guilty without counsel and each received a sentence of seventeen and a half to thirty years, neither defendant was mentally capable of understanding legal procedures or phraseology. As to Fritz Boehm, the probation report which must have been in the hands of the sentencing Judge at sentence time (see Code Crim. Pro., § 482) shows that he was a moron with the mentality of a five-year-old child. Many years later, when he was transferred to a prison from the State institution for "mental defective" delinquents at Napanoch (Correction Law, § 438) Fritz Boehm, who had meanwhile gone to school at the latter institution, had reached a mental age of ten years and eight months and had an I.Q. of 71. Edward Boehm, without the aid or advice of a lawyer, pleaded guilty in 1931 on the very day on which he was arraigned. When he left Napanoch twenty-two years later his mental age was eleven years and one month and his I.Q. was 74. Napanoch records show that neither brother could read or write when they came there in 1932, although each was over twenty years old. "There are some individuals who, by reason of age, ignorance or mental incapacity, are incapable of representing themselves adequately in a prosecution of a relatively simple nature. This incapacity

is purely personal and can be determined only by an examination and observation of the individual '' (*Wade* v. *Mayo*, 334 U. S. 672, 684; see *Palmer* v. *Ashe,* 342 U. S. 134, 136, 137; *Massey* v. *Moore,* 348 U. S. 105, 108, 109). Since such incapacity appears of record without dispute, the 1931 judgment of conviction as to each defendant was as matter of law totally void (see *People* v. *Lewis,* 413 Ill. 116, 122; *Allen* v. *Commonwealth,* 324 Mass. 558, 562; The Right to Counsel, Wis. L. Rev., March, 1955, pp. 301–303). When there appears so total a deprivation of the most fundamental of rights, no court has a choice as to whether or not to annul the conviction, and indications of probable guilt have no bearing on the issue of whether their constitutional rights were violated.

This is not the usual *coram nobis* proceeding where there is presented a question of fact as to whether a defendant was told of his right to have legal counsel and, if so, whether he consciously and knowingly waived that right. There is testimony here that each of the sentencing Justices was accustomed in 1931 to inform defendants, on arraignment, of their right to counsel. But whether or not the Boehm brothers or either of them was so notified is beside the point on this record. A five-year-old child (or a ten-year-old child) in court without a lawyer simply would not know what was going on. To tell him in the formal language of sections 188 and 308 of the Code of Criminal Procedure that he was entitled to be represented by counsel at every stage of proceedings, would be a simple waste of words. Each of the several concepts involved in that verbal formula would be to him, in the absence of a most detailed and careful explanation appropriate to his years, outside of and beyond his understanding. And it can make no difference whether the Judge did or did not realize the mental immaturity of the defendant (although in the case of Fritz Boehm he was put on notice by the probation report).

The order of the Appellate Division should be reversed and the order of Special Term reinstated.

CONWAY, Ch. J., FULD and BURKE, JJ., concur with VAN VOORHIS, J.; DESMOND, J., dissents in an opinion in which FROESSEL, J., concurs; DYE, J., taking no part.

Order affirmed.