Thomas Dickens, J.
Defendant, represented by counsel from the outset of this action to the time of the imposition of sentence, now himself brings this coram nobis motion, written entirely in longhand, for the purpose of having a hearing granted in order to have the judgment of conviction eventually nullified.
In the petition annexed to the notice of motion, defendant asserts as the reason for instituting this application that “ your petitioner never did realize that he was insane — nor did the Court, at the time of pleading and sentence have any knowledge or in any way know that petitioner was mentally unsound.”
Looking through the file of the clerk’s office to learn whether this allegation bears factual substance, I find that, when confronted with the pertinent contents of such file, this allegation cannot in the eyes of the law pass muster. As proof of this shortcoming, I shall lay stress upon certain procedural incidents which had taken place during the period starting with the inception of this action and ending with the imposition of sentence.
They provide the key for the answer to defendant’s alleged reason for making this application.
The indictment, dated November 19, 1953, charges defendant with kidnapping and abduction, with burglary, grand larceny, robbery, and rape, each in the first degree, and with assault in the second degree.
On February 2, 1954, while the trial, founded on this indictment, was in progress, defendant capitulated by compromising for a plea of guilty to the crimes of robbery in the second degree and attempted rape in the first degree. On March 12, 1954, defendant was sentenced on each count, and each was made to run concurrently with the other.
Less than one month after the filing of the indictment, defendant’s attorney obtained an ex parte order, dated December 16, 1953, granting defendant permission to have himself examined by a private physician of his own choice, who was, as stated in his attorney’s affidavit annexed therto, “ a specialist in psychiatry and in diseases or illnesses of the mind.” This measure was adopted after, as further stated in the attorney’s affidavit, “ I have consulted with the defendant and with members of his family and — justice will best be served by examination — as to defendant’s mental condition at the time of the alleged commission of the crimes charged in the indictment.”
*621 Noticeable, at this point, is tbe fact that this ex parte order came into being before the date of the trial, February 2, 1954, by almost two months, and before the date of sentence, March 12, .1954, by almost three months. Yet, not one word relative to this ex parte order and to the result of the physician’s examination, can be found either in the minutes of the trial or in the minutes of the sentence.
Noticeable, too, is the further fact that the allocution preceding the sentencing by the Judge produced in response the usual plea for leniency instead of a plea showing as cause against judgment, a state of insanity. (See Code Crim. Pro., §§ 480, 481; also People ex rel. Pickell v. Onondaga County Court, 190 Misc. 466.)
If I may reasonably judge the meaning of this silence with respect to defendant’s mental condition, I venture to say that from such silence it is reasonable to infer that defendant had been accepted as being legally sane.
On the other hand, the District Attorney submitted a copy of a significant letter, dated February 25, 1954, which was sent by the psychiatric clinic of this court to the Judge who had presided over the trial and who had thereafter imposed sentence on the basis of defendant’s plea of guilty and the same Judge who had signed the ex parte order solicited by defendant. In this letter Doctor Messinger, psychiatrist-in-charge, and Doctor Eogers, senior psychiatrist, jointly declared that “ This defendant is not psychotic; he is of dull normal intelligence. He attains an I. Q. of 83. —He is classified as a pathological individual, with alcoholism, anti-social and self-centered.”
It all sums up then to this clear conclusion: Both the Judge, counsel, and defendant and his family were fully aware before trial and sentence that defendant’s mental capacity had been subjected to medical probing and that the diagnosis thereof had proved defendant to be legally amenable to stand trial.
It seems plain to me, therefore, that the Judge, having full knowledge of the mental condition of defendant, could in his judgment proceed with the trial and could accept defendant’s plea. (People v. Codarre, 206 Misc. 950, 952, affd. 285 App. Div. 1087; see, also, People v. Valentino, 285 App. Div. 1198; People v. Smyth, 3 N Y 2d 184, 187; Frank, Coram Nobis, Cumulative Supp., p. 1, n. 2.)
Defendant has presented a very weak application. Not only is his bare allegation, in substance, that the Judge at the time of pleading and sentence did not have knowledge that petitioner had.been mentally unsound, a mere conclusion (People v. Flora, 281 App. Div. 946, affd. 306 N. Y. 615), but, in the light of the *622 record of this court, is also like so “ Many sworn allegations * * * palpably untrue, not improbable or unbelievable, but untrue ” and “ The allegations in this case fit this description.” (People v. White, 309 N. Y. 636, 641, cert. denied 352 U. S. 849; see, also, People v. Nickerson, 283 App. Div. 854.)
In the absence of evidence to the contrary, the People are not required to assume the burden again of establishing that what was done was regular. (People v. Smyth, 3 N Y 2d 184, 187, supra.) The People’s position in this respect takes on greater strength when defendant’s impeached assertion is weighed against the record, heretofore reviewed. The record, in consequence, should prevail. (People v. Canfora, 9 Misc 2d 930, 932, affd. 6 A D 2d 781; People v. White, 309 N. Y. 636, 641, supra.)
The motion is denied.
The District Attorney is directed to enter an order in conformance with the decision herein and to forward a certified copy to defendant.