Thomas Dickens, J.
Defendant urges in this coram nobis motion that he had no attorney representing him in 1929, at the time when he had changed his plea of not guilty to that of guilty in answer to the charge of robbery in the second degree, nor did he have one representing him when he was thereafter sentenced.
Fraud is not involved in this motion. (See People v. Milo, 4 A D 2d 679, motion for rearg. denied 5 A D 2d 770.)
Defendant concedes having had assistance of counsel at the arraignment. Arraignment is, therefore, eliminated from problematic consideration, so far as representation by counsel as an issue is concerned. (See People v. Martin, 1 Misc 2d 76, 80 [middle], affd. 7 A D 2d 970; Eli Frank, Coram Nobis [1954- *12 1957 cum. supp.], p. 11 [46].) This elimination leaves only non-representation by counsel at the confession in open court as the grievance for judicial determination.
If, after examination, the quantum and the character of the proof should rise to the required standard established by legal precedents, affirmative relief must ensue. (People v. Shapiro, 188 Misc. 363.)
At the testimonial hearing of this motion, defendant was the only witness for himself.
In passing judgment upon the quality and the credence of a petitioner-defendant’s testimony, a Judge is not bound to accept his naked assertion, even if not directly contradicted, that he was not represented by counsel on the day of his revised plea of not guilty to that of guilty and that he was not advised then or on the day of sentence of his -right to the assistance of counsel, as in the case at bar. (People v. Pilkington, 2 A D 2d 731, cert. denied 352 U. S. 1008; People v. Lensky, 1 A D 2d 831; People ex rel. Asaro v. Morhous, 268 App. Div. 1016, appeal dismissed 294 N. Y. 694.) A naked assertion is regarded more precariously when the record is entirely silent, as here, concerning any request for the aid of counsel by defendant or by anyone else in his behalf. (People v. Martin, 1 Misc 2d 76, 82 [top], affd. 7 A D 2d 970, supra.)
My judicial duty is to decide whether defendant had produced substantial and credible evidence sufficient to overcome the presumption that the judgment of conviction was regular and also sufficient to overcome the evidence of regularity given on behalf of the People. (People v. Boehm, 285 App. Div. 245, affd. 309 N. Y. 362.) The presumption of regularity can neither be lightly disregarded, especially, as in the case at bar, after the passing of an extensive period of time from the day of conviction, nor be overcome by incredible testimony. (People v. Sheehan, 4 A D 2d 143; People v. Yancovich, 122 N. Y. S. 2d 205, affd. 283 App. Div. 842.) Included within the measure of the presumption of regularity, is a judgment of conviction founded on a plea of guilty. (People v. Martin, 1 Misc 2d 76, 80 [top], affd. 7 A D 2d 970, supra.)
Confronting defendant, too, is the presumption that no person acting in an official capacity, as for instance, a Judge or a Clerk of a court, or any other person acting under an oath of office, will do anything contrary to his official duty. (People v. Gencarelli, 15 Misc 2d 45; People v. Canfora, 9 Misc 2d 930, affd. 6 A D 2d 781, cert. denied 359 U. S. 918; People ex rel. Asaro v. Morhous, 268 App. Div. 1016, appeal dismissed 294 N. Y. 694, supra; People v. Rodriguez, 13 Misc 2d 1004.)
*13 Then again, assuming, arguendo, that he did not have an attorney appearing for him after the arraignment, defendant is perforce faced with the further principle that “ scrupulous inquiry by the court need not be made at every stage of the proceeding subsequently to the arraignment concerning a defendant’s desire for the aid of counsel.” (People v. Martin, 1 Misc 2d 76, 80 [bottom], affd. 7 A D 2d 970, supra.) Neither does a court have to force counsel on a defendant nor does a court forcibly have to prevent him from pleading guilty. (People v. Palmer, 296 N. Y. 324, 328 [bottom]. See, also, People v. West, 15 Misc 2d 551; People v. Shapiro, 188 Misc. 363, supra.)
Likewise besetting defendant’s case are other difficulties. The stenographic minutes covering the proceedings of both the arraignment, the plea of guilty, and the sentence, are missing from the file of the Clerk’s office. (Cf. People v. Buck, 6 A D 2d 528, 530 [top].) That such minutes were not available, was .stipulated by the respective parties. Unfortunately for defendant, the law places no official duty upon the shoulders of the District Attorney to produce such minutes. (People v. Wilson, 85 N. Y. S. 2d 869, 872 [top].) Furthermore, the presiding Judge, the stenographer and the clerk of the particular division of the court (Part VI), are now dead. (Cf. People v. Canfora, 9 Misc 2d 930, affd. 6 A D 2d 781, cert. denied 359 U. S. 918, supra.) What was stated in Matter of Bojinoff v. People (299 N. Y. 145, 149 [bottom]) pertaining to a similar situation, may be made to apply here: ‘ ‘ The lapse of time has placed the petitioner at a disadvantage. In the meantime the sentencing Judge has died and the stenographer’s minutes are no longer available, presumably having been destroyed as authorized by law.” In People v. Wilson (supra, p. 872 [top]) section 297 of the Judiciary Law is mentioned as the source of authority for the destruction of the original stenographic notes, which can be done, as in that section provided, at the expiration of two years from the day of trial or hearing, unless the original notes are filed pursuant to an order.
Turning my attention now to his testimony, I conclude, after thoughtful deliberation, that defendant has failed to impress me favorably with his account of the events that took place in 1929 at the original proceedings. His story lacks the credible quality of a convincing witness. This impression will be brought into bold relief by appropriate quotations from, and by incidental references to, his testimony in the course of its review.
But, before venturing into that field, it will not be amiss, at this stage, to set forth, in substance, that part of his background *14 reflecting; upon his criminal past, as defendant himself had related it in his testimony.
In the circumstances of this case, this phase of his testimony proves itself to be a topic -of interest as a guiding feature to be considered in weighing his credibility concerning the events in question. (Cf. People v. Martin, 1 Misc 2d 76, 81 [top et seq.), affd. 7 A D 2d 970, supra; People v. Boehm, 285 App. Div. 245, 248 [middle], affd. 309 N. Y. 362, supra; People v. Shapiro, 188 Misc. 363, 365 [middle], 366 [top], supra.)
The testimony given by defendant in this respect reveals such part of his background to be that of a recidivist. In 1927 he was convicted in the Federal court on the charge of tampering with United States mail and was sent to Westchester Penitentiary to serve a term of. eight months. In 1929 he was convicted on a plea of guilty to the charge of robbery in the second degree and was sent to State prison for a term of 7 years and 6 months to 15 years. (This judgment of conviction is now the target of defendant’s attack.) In 1946 he was convicted again on the charge of robbery, but this time he was accused of being armed, and was sent to Dannemora Prison, where he is now serving a term of 30 to 60 years.
The testimonial details here of his defiant attitude in the Federal court prosecution in 1927, when arraigned there, call for special attention. They offer an imposing challenge to his contention at this hearing that he had had no knowledge of his legal rights as a defendant in this court in 1929.
It is very significant, indeed, that in the Federal court prosecution, he, in his role of defendant, knew well enough, without fear of probable consequences, to remain stubbornly mute and immovable for three days, despite all authoritative prodding to have him answer the usual questions put to a prisoner at the bar. Whether it was his right to remain silent there, is of no affair-here. Mention of this is made solely in its relative bearing upon knowledge of his legal rights. As a contributivo aid to my judgment of his credibility, the testimony in this vein tends to lead me to believe that he was, at least, somewhat familiar with court procedure in one way or another, even though that offense was his first; consequently, he was not one, to borrow the common vernacular, “ who didn’t know what it was all about.”
The foregoing commentary provides, to an extent, substantial food for judicial thought and reflection in evaluating all the testimony related by defendant as a sole witness interested in his own behalf to have the conviction vacated. (See Eli Frank, Coram Nobis [1954-1957 cum. supp.], p. 34.)
*15 Coming now to the circumstances surrounding his plea of guilty, I find that within the period preceding his arraignment, defendant, in an interview in the “ bull pen ” with the lawyer retained, as he said, by .his mother, told the lawyer of his intention to plead not guilty because he could profess his innocence inasmuch as no statement concerning the crime had been made by him or by the codefendant, ‘ ‘ like most criminals do when they commit a crime.” Then he added: “ I did not need to be advised of that [strange language for one-ignorant of court ways, to use] because they were my intentions, anyway, of going all the way through on a not guilty plea. ’ ’ Thereupon, when he entered the courtroom and proceeded to the Bar for arraignment, with the lawyer standing at his side, he ‘ ‘ automatically plead not guilty.” (Italics supplied.)
Although he had not discharged the. lawyer, defendant heard no more from him. Specifically stated, “he had no further association with him.” Yet, again significantly, while quibbling under cross-examination over his recollection.of continued association with his lawyer after the arraignment, defendant gave the following answer to the following question:
‘1 Q. And you say that you do not recall Mr. Dyer being with you after the first time the arraignment, you were in Court with him, is that right? A.. That’s right, sir.” (Italics supplied.)
This answer is indicative of a clear variation from the certainty of his other statement that he .'had “had .no further association with him” after the arraignment. (Cf. People v. Boehm, 285 App. Div. 245, 247 [middle et seq.], affd. 309 N. Y. 362, supra.) It is obvious that such variation touches materially on the vital organ of the issue, to wit, representation by counsel after the arraignment.
Significant, too, is the “bull-pen” conversation that he had held with the codefendant after the arraignment. In this conversation, defendant referred to the “ relative merits [again strange language] and the time that I expected to get * * * if I stood trial, or if I took a plea.” When he learned of the codefendant’s intention to plead guilty and throw* himself upon the mercy of the court, defendant remarked, 11 Well, I don’t know which way to go. I haven’t made * * * and don’t intend to make any statement now*. They apprehended you at the scene of the crime. Me * * * a month later. I should exercise my rights to stand trial and possibly I could beat it.” [Again strange language.] Nevertheless, he yielded to the law* and together with the codefendant pleaded guilty, he in personam and the codefendant with the aid of an attorney. And *16 his reason for the turnabout was that he “can be identified * * * it is too risky to go the other way. ’ ’ (Italics supplied.)
Without going into detail regarding the rest of the testimony given by defendant, which upon analysis proves also nocuous in its effect on the credibility of defendant, I find that the whole of his testimony portrays the type of person possessed of a memory of convenience — a memory regulated with deliberate design to recall only that which could stand him in good stead but to dissemble or to make dim or uncertain anything else that might prove detrimental to his interests. The result of it all imbues me with a firm conviction that his story is wholly fancy-fed. And, for the purpose of emphasis, I note, judging him by his seemingly knowing references to procedural matters of the courts and by the sort of legal terminology that he had used while testifying about his rights as a defendant, that he did know what it was all about, and not that he did not know that he, as he had repeatedly stated, “ was entitled to be represented by counsel at all stages of the proceedings [again strange language].” (Italics supplied.)
Lest the time element be misconceived, I direct attention to the fact that most all this language, so unusual for one who had steadfastly maintained ignorance of the ways of the courts, was used by him in 1929, when he was arrested for the crime resulting in the conviction that he now seeks to upset. As a witness at this hearing, he repeated merely what he had said at that time.
The literal proof in effect intensifies the discomfiture of defendant’s position. On the back of the indorsement sheet to which the indictment is attached, appears a firm name of attorneys, composed of two individual names. One of these names corresponds to the name of the arraignment attorney. This firm name is inserted in place of a crossed-out name of an individual attorney. The identification of the firm name as representative of defendant, is indicated by the numeral “ 2,” written against defendant’s name thereon, and the name of an individual attorney as representative of the codefendant, by the numeral “ 1,” written opposite his name.- The letters “A. P.”, appearing thereon, were explained by a Deputy Clerk to mean 1 ‘ Attorney Present.” This same Clerk explained, in addition, that all these notations were made in conformity with the practice followed in those days when an attorney would enter the case, and, that was, as indicated, to record the filing of a notice of appearance by inserting the attorney’s name thereon, and when the attorney would be present in court, to make note of it in the form mentioned earlier, that is, by the letters “A. P.” *17 (Cf. People v. Ganfora, 9 Misc 2d 930, 931 [bottom], affd. 6 A D 2d 781, cert. denied 359 U. S. 918, supra.)
In my thorough examination of the physical appearance of the back of this indorsement sheet, and also of the contents of the Clerk’s minute book, which I shall discuss right after this, I have failed, however, to find any kind of notation or memorandum which would in any wise indicate whether or not there was an appearance by any one of the recorded attorneys on the day of the guilty plea or on the day of sentence. Yet, defendant’s demeanor on the witness stand appeared to be that of one whose mind was crystal clear in asserting that the codefendant had representation of counsel throughout the proceedings, whereas he himself did not have representation. In spite of thait, he apparently did not deem it necessary to produce the arraignment lawyer as a witness for the purpose of corroborating his testimony on this score. And no explanation, if any, was offered for the absence of the arraignment lawyer or to account for his whereabouts.
The other available documentary records produced by the Clerk of Part VI, consist of the daily disposition book, the calendar book, the sentence book, and the minute book of 1929. Being entitled, as against defendant’s bare assertion uttered 30 years later, to accept, which I do, these records made in 1929, in order to help determine this controversy (People v. Corcoran, 3 A D 2d 955; see, also, People v. Bean, 195 Misc. 1025, and People ex rel. Williams v. Murphy, 6 N Y 2d 234), I find expressly in the official minute book, corresponding notations in a vertical column for defendant and for the codefendant under a caption bearing their names. Nowhere, however, is there any entry of an attorney’s name for either defendant or the codefendant. The Clerk’s explanation for the existence of this vacuum was that the entries in those days were not so complete as they are today. Since such omission is not conclusive (People v. Sheehan, 4 A D 2d 143, supra; People v. Lake, 190 Misc. 794, appeal dismissed 299 N. Y. 675), and since it raises no presumption in favor of defendant on the question of counsel representation (People v. Yancovich, 122 N. Y. S. 2d 205, affd. 283 App. Div. 842, supra), I decline to lean toward defendant’s version of the affair in 1929, regardless of the state of the record, in view of my finding against defendant’s credibility. (See People v. Yancovich, supra. Cf. People v. Wilson, 85 N. Y. S. 2d 869, supra; People v. Boehm, 285 App. Div. 245, affd. 309 N. Y. 362, supra; People v. Shapiro, 188 Misc. 363, 364 [middle], 365 [middle], supra; People v. Bean, 195 Misc. 1025, supra.) *18 Moreover, the omission of the names -of the attorneys could be attributed, as stated by the Clerk, to the incomplete methods, employed in those days, of making entries. In other words, both defendants might have had attorneys representing them throughout the proceedings but no entry of it was made thereof.
When a hearing is held, the burden is upon a defendant to prove his case. (People v. Gencarelli, 15 Misc 2d 45, supra; People v. Canfora, 9 Misc 2d 930, affd. 6 A D 2d 781, cert, denied 359 U. S. 918, supra; Eli Frank, Coram Nobis [1954-1957 cum. supp.], p. 28 [n. 14].) The People have, in such instance, no burden to establish that a defendant was represented or was advised by counsel. (People v. Milo, 4 A D 2d 679, motion for reargument denied 5 A D 2d 770, supra.) Questions of fact, including .the credibility of witnesses, are for the trial court. (People v. Simpson, 4 A D 2d 806. See, also, People v. Pilkington, 2 A D 2d 731, cert. denied 352 U. S. 1008, supra; People v. Shapiro, 188 Misc. 363, supra.)
The attempt by defendant, in order to procure a new trial, to resuscitate and revitalize the original prosecution, now tinged with ‘ ‘ ancient vintage ’ ’ and made hoary with passing age, has met with complete failure. The major participants familiar with the facts of the original proceedings are dead. The records pertaining thereto could be properly explained only by such dead, if they were alive today. His own testimony stands seriously pulverized. And this is not all. Not only has defendant fallen entirely short of sustaining the burden of proof as required under the law, that is,11 by clear, credible, and convincing proof that his statutory and constitutional rights were denied to him ” (People v. Martin, supra, p. 80) but has, in view of the particular facts and the particular circumstances surrounding this case, exhibited the exercise of the kind of active faculty that veers in capacity towards knowingly, intelligently, and voluntarily following the kind of course that denotes a waiver of any such irregularity as he here advances, assuming the verity of the existence of such irregularity. (See People v. Lynch, 2 A D 2d 854, cert. denied 352 U. S. 1011; People v. Martin, 1 Misc 2d 76, affd. 7 A D 2d 970, supra. See, also, People v. Winningham, 11 Misc 2d 650, affd. 8 A D 2d 707; People v. Palmer, 296 N. Y. 324, 328 [bottom], supra; People v. Crispell, infra.)
To sum up briefly the deficiencies in the quality and the quantum of proof presented by defendant, I have only to repeat what the court said in People v. Crispell (185 Misc. 800, 803 [top]) rendered in 1945; “ In view of the lateness of time in which this question is raised during which records have legally *19 been destroyed and considering ¡the ordinary frailties of memory, 1 cannot take the bare statement of the defendant that he was not advised of his right to counsel at the time of his arraignments in 1928 and 1935. In the absence of satisfactory proof of the noncompliance with the constitutional requirement, the presumption of regularity prevails.”
Speaking in broader terms on the powers of memory, the courts entertain the view that ‘ ‘ memory has natural defects, besides being subject to be warped and twisted by bias, and besides being liable, in the face of self-interest, to substitute strained and unwarranted inferences for the language used”. (Moores v. Glover, 13 N. Y. S. 565, 566 [top], appeal dismissed 133 N. Y. 665.) “It is well known that the efforts of memory are seldom equal to the task of recalling, after any considerable lapse of time, even the exact substance of words and phrases" (Halsey v. Sinsebaugh, 15 N. Y. 485, 488 [bottom]. See, also, People v. Wilson, 85 N. Y. S. 2d 869, 872 [bottom], supra.) In his book “On the Witness Stand” (p. 44, bottom), Hugo Mimsterberg calls mental inexactitude “ the treachery of human memory.”
Yet, after a lapse of 30 years, defendant’s mind radiated crystal-clear recollection of incidents and language as if they had taken place in the very recent past.
Charges made in coram nobis are subject to the same criteria relied upon in all causes to determine where truth lies. (People v. White, 309 N. Y. 636, cert. denied 352 U. S. 849.) The production of proof consisting of the best evidence is included within the criteria set by the law. (Huda v. American Glucose Co., 13 Misc. 657, 663 [top], affd. 12 App. Div. 624, affd. 154 N. Y. 474; People v. Rodriguez, 13 Misc 2d 1004, 1007 [bottom], supra.) And adherence to the “ fundamental [rule] that a witness may not disregard his oath to tell the truth in the first instance ”, is another of the criteria set by the law. (People v. Ezaugi, 2 N Y 2d 439, 443 [bottom]. See, also, People v. Vasquez, 18 Misc 2d 614; People v. Palazzola, 18 Misc 2d 619, 622.)
I granted defendant the widest latitude permitted by law in order to enable him to prove his case by evidence of substantia] and probative caliber. (Cf. People v. Boehm, 285 App. Div. 245, 246 [bottom], affd. 309 N. Y. 362, supra; People v. Canfora, 9 Misc 2d 930, affd. 6 A D 2d 781, cert. denied 359 U. S. 918, supra.) In this he failed. Instead, the proof produced I find to be of the quality and the quantity which do not measure up to the standard required by law as necessary to sustain his burden of proof. I must rule against defendant in the premises.
*20 It follows that this application for the issuance of an order to vacate the judgment of conviction, and to declare a trial de novo, is denied.
The District Attorney is directed to enter an order in conformance with the decision herein and to forward a certified copy to the defendant and to his attorney.