Thomas Dickens, J.
Judicial pressure by the use of coercive means, causing a change from his plea of not guilty to one of guilty, is the reason given by defendant for instituting this coram nobis motion.
According to defendant, who was the sole witness for himself at the hearing, this incident took place on May 10, 1910, at the time of his arraignment to answer the indictment charging him with grand larceny. His version is that the sentencing Judge *326 had then admonished him that, using defendant’s own language, “he don’t tolerate thieves. He says if the Court — if I go to trial and the Court finds me guilty, I will receive the maximum penalty. So I still persisted I was innocent. And my lawyer spoke it over with me, and I asked him what I should do. So he says, ‘ You’d better listen to the Judge.’ — and I plead guilty.” This strong warning was delivered at the “ bench ” in the presence of defendant’s lawyer. (Italics supplied.)
In the next breath, however, while under cross-examination, defendant changed the date of this incident from May 10 to May 19, the latter being the day when he had pleaded guilty. Prodded for details, he at first seemed not to remember whether the Judge had said anything to him at the plea of guilty; but, upon further questioning, he retracted his first answer with the corrective statement that, “ Oh, yes, that’s the day he said to me, before we pleaded guilty, he said to me about he don’t like thieves, now if I tell the truth he would let me go.”
Neither in the minutes of the guilty plea, dated May 19, 1910, nor in the minutes of the first sentence session, dated May 26, 1910, now, respectively, defendant’s Exhibits “A” and “ B,” nor in the minutes of the second sentence session, dated June 17, 1910, now People’s Exhibit “ 1 ”, can I find anything that could in anywise be said to justify the critical attack made upon the sentencing Judge. Nowhere in these available minutes (there appears to be no transcript of minutes in the file for May 10 and no copy thereof was offered in evidence by either side), does anything appear that could be said to indicate that the Judge had, prior to the plea of guilty, employed any language of a coercive nature to induce such plea — no, not even the slightest shred of language from which coercion could be spelled out. (Cf. People v. Passante, 22 Misc 2d 11.) Actually, the material contents of the minutes of these three sessions, add up to no more than a tongue-lashing directed at this defendant for lying, a critique of the probation officer for attempting to arrogate to himself a court function, and a leciture on good behavior preceding the revision of an already imposed sentence to one of suspension — all, however, having taken place after the plea. Even if the tongue-lashing and the lecture were to be regarded as irregular, they would have no potency as issues, because, for one reason, they arose, as noted, after the guilty plea and while the period for sentence was in the stage of progressive pendency. (See People v. Brancazio, 22 Misc 2d 302.)
Left as the legal weapon for sustaining the contention herein, is the remaining testimony of defendant at this hearing, dealing with the prime issue.
*327 Exercising my judicial function to determine this question after the holding of a testimonial hearing (People v. Passante, supra), I have no hesitancy in stating that I do not believe that defendant is telling the truth. Convincingly, I find from his testimony, which is replete with instances of evasive answers, contradictory statements, and self-serving lapses of memory, that he has portrayed himself, by the self condemnation of such testimony, to be the kind of petitioner witness who possesses a minimum of scruples in his concern about playing havoc with the truth. (Cf. People v. Passante, supra; People v. Vasquez, 18 Misc 2d 614, 615 [middle]; People v. Palazzola, 18 Misc 2d 619, 622 [top].) Such record of his testimony has reached the point of being beyond the pale of denial or redemption. (Cf. People v Canfora, 9 Misc 2d 930, 932 [top], affd. 6 AD 2d 781, cert, denied 359 U. S. 918.)
On the basis of such pronounced dismal record, an extensively detailed survey of, and an extensively detailed commentary on, the testimony prove themselves unnecessary. A few illustrations of the highlights with apropos comments thereon, should be sufficient to demonstrate conclusively why I cannot attach the slightest measure of approbation to the credibility of defendant as a witness.
For instance, defendant’s persistent professions of being innocent of the 1910 crime are figuratively reduced to a heap of shambles when the nature of the following excerpt from the sentence minutes of June 17, and when whatever else hereafter follows of a similar character, are applied as the probes for the truth, with the result that he is revealed as an unmitigated prevaricator, to say the least; and such is the result by virtue of his own self-condemnation:
“The Court (addressing the defendants): * * * in this report the probation officer deemed it necessary to say that ‘ The boys strenuously deny their guilt and insist that they found the pocketbook. ’ Now, that statement was a lie, as you admitted to me in open court, wasn’t it? A. Yes, sir.
“Q. You deliberately piclced this girl’s pocketbook on the subway cars? A. Yes, sir.” (Italics supplied.)
Because the sentencing Judge had addressed defendant and the codefendant, together, as shown by the foregoing colloquy, “there is nothing to indicate which defendant answered,” contended defendant’s attorney at the hearing. The sentence minutes of another criminal prosecution instituted against defendant in 1942, however, supply a decisive clue to clarification. In malting reference to the conviction now before me for *328 consideration, the Judge in that other prosecution put the following question to defendant and received the following answer: 11 Q. You and Weiner the codefendant at bar had picked this lady’s pockethook? A. That’s right.” (Italics supplied.)
Yet, before his admission of guilt on June 17, 1910, as heretofore noted, defendant had, at a prior time, denied guilt and had, at the same time, accused the codefendant. He went so far as to display the temerity of offering an obscure answer on the subject of his guilt to another question bearing on his guilt, put to him by the Judge in the 1942 prosecution, after having admitted his guilt to this Judge, as also heretofore noted. This answer reads: “ Well, I was with the one that did steal it, yes, sir,” — a quibbling answer different from the unqualified answer of guilt already given to this Judge, as recorded on the earlier page 12 of those minutes. And again despite his admission of guilt at the different times heretofore stated, he once more saw fit, but this time at this hearing, to testify that at the alleged conference at the “ bench ” in 1910, regarding a plea of guilty, he had persisted in maintaining his innocence. And to cap it all, when interrog’ated under cross-examination about his answer to the question put to him by the sentencing Judge concerning the theft, defendant at first stated that he did not remember the answer he gave in 1910, but then came forth with the direct response, “ I never made that answer,” followed by an emphatic “ No ” to another question of similar import. Its effect with respect to these minutes can be only one: that the stenographer was, to be mildly stated, incorrect in recording* the notes.
I cannot accept this random imputation challenging the authenticity of the stenographic record, from a man whose veracity is reduced to its lowest ebb, and I cannot be so influenced by it as to ignore the rule that a stenographer is an officer of the court and his original stenographic notes are part of the proceedings of a cause, and the transcription of such notes into documentary minutes is to be given judicial credence as a literal court record, particularly in the absence of any sound legal reason to call in question the contents of the minutes. (See People v. Hull, 13 Misc 2d 969; People v. Vasquez, 18 Misc 2d 614, supra.) This rule continues to retain its full vital force in this case, despite defendant’s groundless imputation.
As a befitting climax to the evident proclivity of defendant to resort to lying, I quote again from the sentence minutes of the 1942 prosecution, dated December 21, at page 23: “ Q. In other words, do you say now that in 1910, when you gave your age as 17, you Medí A. I did: I believe I did.” (Italics supplied.)
*329 A maxim quoted from Blackstone ’s Commentaries, at page 954 (Edited by Bernard C. G-avi-t), summarizes the inevitable consequence of defendant’s variable statements: “Words should be taken most strongly against him who uses them. ’ ’
Moreover, the deplorable state of the criminal record of defendant has had the effect of adding a persuasive touch of firmness to my judgment of disbelief in the verity of his story, providing, as a result, another jar to his quest for favorable credibility. (Cf. People v. Passante, 22 Misc 2d 11, supra.) Such record, by his own testimony, reveals him to be a confirmed recidivist of eight convictions, three of which were for crimes bearing close kinship to the trade of a pickpocket, the subject of the 1910 conviction. These three are jostling, grand larceny, and robbery, for the last named of which he is at present doing time. These related crimes, pointing markedly to an inherent trait for stealing, have provided substantial weight in confirmation of my disbelief regarding his protestations of innocence in the case under consideration, that is, in the case of the 1910 prosecution. (Cf. People v. Passante, 22 Misc 2d 11, supra.)
Then again, it seems conspicously strange after a prolonged period of silence for almost half a century, dating from 1910 to the present application, that this defendant should suddenly decide to break the protracted silence, shake himself loose from the effects of this extensive stretch of lethargy, and then proceed to recall and to bring out of the dim shadows of a long-departed past, a grievance as an issue .that has all the earmarks of a deliberate afterthought. This observation has for its forceful prop the combined several instruments of a documentary record of the conviction in 1942, not in any one of which is there one. word mentioned by him or by his then attorney about coercion. Noticeable, too, is the failure of defendant, by himself or with the aid of his present attorney, to contend in the present proceeding that the subject of coercion had been raised in any one of the other convictions — all which came into being after the 1910 conviction. (Cf. People v. Mogavero, 9 Misc 2d 197, affd. 7 AD 2d 839.)
It appears to me that, upon comparison, there is a very impressive resemblance between some of the discreditable, or to be more exact, discredited, phases of this case and those in People v. Passante (supra) particularly between those that involve recourse to falsification.
The sum and substance of this discussion leaves wholly unimpugned the presumption of regularity (People v. Passante, supra), inasmuch as defendant has failed to prove his contention *330 by a fair preponderance of evidence. (See Frank, Coram Nobis, p. 70.) Motion denied.
The District Attorney is directed to enter an order in conformance with the decision herein and to forward a certified copy to the defendant and to his attorney.