Thomas Dickehs, J.
The libel of accusation underlying this prosecution was laid in four counts, two for alleged acts of grand larceny in the first degree, and two for alleged acts of obtaining credit by the use of a'false statement.
The attainder by verdict rendered on December 16, 1960, before me as the Trial Judge, was founded on the two larceny counts. The trial had lasted three weeks, and, at the end, had become productive of three volumes of testimony consisting of more than 1,300 pages.
On the day of the addiction, January 27, 1961, I sentenced defendant, as a second felony offender, to State prison for a term of not less than 5 years and not more than 10 years on each larceny count; both terms, however, were made to run concurrently.
The issues defendant now raises in this coram nobis motion, dated February 19, 1962, are these: (a) “ The prosecution knowingly employed perjured testimony; The prosecution knowingly, wilfully and deliberately 1 suppressed vital material evidence ’ at the time of the trial ”; and (b) “ Defendant did not have adequate representation at the time of his said trial.”
The perjury — suppression issue under “ a, ” the subject of which defendant makes much of, consists of a difference in the date pertaining to a meeting between a lawyer — witness for the People and defendant. This witness had testified on the witness stand that the date of the meeting was some time in August, 1959. Defendant, on the other hand, contends in his petition that not until January 15,1960, had this witness “ laid eyes upon defendant,” and, of this disparity in time, the District Attorney had allegedly been aware, and yet, instead of having revealed the latter date, he had suppressed it.
This issue was, for the first time, raised by defendant at the time of sentence, when, in response to the allocution, he, inter alia, made this statement: “ Mr. Jasper who took the stand and said he was an attorney for thirty-five years and that I was in his office on August 23rd and August 24th, where I have proof I was in an auction sale in Rutherford, New Jersey; that I signed in on August 23rd and 24th, that I was there. And, I was never in this attorney’s office at all, as he stated.
“ That the first time I ever seen this man ivas in November of 1959.” (Emphasis supplied.)
The conflict' of the meeting dates, that is, the one in November of 1959, as stated by defendant at the addiction, and the other on January 15, 1960, as alleged by defendant in his petition, comes out of defendant’s own mouth, and yet, defendant, in his *771 petition, takes the ground of boldly assailing the lawyer — witness for the People as one who is a “ liar.” This shifting of ground by defendant, with respect to the date, from the one given at the time of sentence to the other as alleged in his petition herein, within the short interval of less than one year, has evoked serious food for thought reflecting on the credibility of defendant, with the dire result of justifiably leading me to turn the scale against him, and so, wholly to discredit him. (Cf. the following cases: People v. Tarver, 207 N. Y. S. 2d 32; People v. Ponitz, 22 Misc 2d 325; People v. Vasquez, 18 Misc 2d 614.) This is especially the case, as it is unmistakably obvious that the real date had always been a matter within the personal knowledge of defendant at the time when he alleged the date in his petition now in conflict with the date as stated by him at the time of the addiction. (See People v. Gencarelli, 15 Misc 2d 45, affd. 9 A D 2d 614, affd. 8 N Y 2d 906, cert. denied 364 U. S. 875.)
Further militating against defendant is his failure to produce a supporting affidavit from his then personal attorney (not the trial lawyer), who, he says, had accompanied him on the occasion when he met the lawyer — witness for the People, and who had also been present on the occasion when he had had a telephone conversation with an Assistant District Attorney of Queens County concerning the meeting date. (See People v. Scott, 10 N Y 2d 380; People v. Mogavero, 9 Misc 2d 197, affd. 7 A D 2d 839.)
The long and the short of this phase of the alleged issue, is that I do not, in any event, consider the question of the date of the meeting as materially bearing on the major issues as delineated by the allegations of the indictment. In my estimation, the conflict of dates amounts, in legal value, to no more than incidental evidence in conflict, and as such, is to be considered as one of the elements in passing judgment on credibility, and credibility is a subject for the jury. (People v. Fanning, 73 N. Y. S. 2d 68; People v. Bell, 31 Misc 2d 814.) On the credibility of Avitnesses as a nonsubject for coram nobis, see Frank, Coram Nobis ([1954-1960 Cum. Supp., p. 39], p. 64, n. 15, par. 2). See, also, People v. McElroy (11 A D 2d 556).
Assuming, for all that, that the question of the date is material and disregarding for the moment my adverse ruling against defendant on credibility, but instead, proceeding on the merits of the charge itself .as hurled at the District Attorney, I find no substantial facts in the petition which can be said to bolster up the charge, so that the charge could legally be said to have the power to stick. The allegation in this respect is conclusory *772 and bare and smacks somewhat of second-hand evidence. In such form, it is regarded in law as worthless. (People v. Scott, supra; People v. Mogavero, supra; People v. Fanning, 300 N. Y. 593; People v. White, 309 N. Y. 636, cert. denied 352 U. S. 849; People v. Pettigrew, 34 Misc 2d 114; People v. Wurzler, 280 App. Div. 1020.) For such charge to be of consequence in law, there must be a factual link to knowledge by the District Attorney. There does not appear to be any here of any essence, by a long sight. (People v. Rodriguez, 13 Misc 2d 1004, cert. dismissed 362 U. S. 984); See particularly as to perjury, People v. Lester (10 A D 2d 971). See, also, as to the effect of a defendant’s knowledge of perjured testimony and its alleged suppression, Frank, Coram Nobis ([1954-1960 Cum. Supp., p. 146], par. 5.02 [f], p. 106, n. 82.3).
The short of the matter is that both on credibility and on the merits, I do not hold with defendant on the issue under “ a.”
In support of his complaint of inadequate representation by counsel under “b,” defendant attacks the competency and the integrity of his counsel for failing to uncover the afore-mentioned alleged “ lie ” allegedly committed by the lawyer witness for the People, and for counsel’s lending, in effect, a deaf car to defendant’s wish that certain witnesses be subpoenaed.
The best answer factually of record to this criticism, is the colloquy I had with defendant, in which his response in this vein, clearly belies his present complaint:
“the court: Well, I consider Mr. Holley a very capable lawyer.
“ the defendant: I do not deny he was a capable lawyer but he couldn’t get to the witnesses. He was a sick m,an. He couldn’t run to Jersey and The Bronx and Queens and New York City to get all these witnesses in my behalf.
“ I have the subpoenas that Mr. Holley gave me in his own handwriting to get these people, and I didn’t get one because I was remanded to prison. ’’ (Emphasis supplied.) Then, further, is recorded the following:
“the court: That is my answer he was represented by a very competent counsel.
“ the defendant: I do not say no but if I wasn’t remanded in prison I would have had eight or ten witnesses.” (Emphasis supplied.)
This colloquy speaks volumes in and by itself; consequently, it needs no commentary or discussion, except" to add in connection therewith the pronouncement that I take judicial notice of the competency and the integrity of Mr. Holley in his standing at *773 the Bar. (See People v. Codarre, 206 Misc. 950, affd. 285 App. Div. 1087. See, also, People v. McManus, 17 Misc 2d 247.)
A review of the law on the relationship between attorney and client shows that in its influence on the relative obligations of an attorney to his client as regards the. situation here, there is little for defendant to rely on, particularly as revealed by the circumstances of this case.
For a preliminary observation in general I quote from People v. Brown (7 N Y 2d 359, 361, cert, denied 365 U. S. 821): “ Coram nobis may not be availed of to remedy counsel’s negligence or error of judgment. It would be folly indeed for the courts to sit and hear disappointed prisoners try their former lawyers on charges of incompetent representation.”
Absolute certainty of advice on the law, is not always possible. (Matter of Remy Sportwear, 16 Misc 2d 407, 410.) No attorney is bound to know all the law. (People v. Baldwin, 15 Misc 2d 431, motion for leave to appeal denied 7 A D 2d 629; People v. Gonzalez, 15 Misc 2d 438; People v. Vasquez, supra.) Not even a judge is bound to know all the law. (Byrnes v. Palmer, 18 App. Div. 1, 4, affd. 160 N. Y. 699.) And, no attorney is held to the rule of infallibility. (People v. Murdaugh, 13 A D 2d 509; People v. Lee, 4 A D 2d 770, affd. 4 N Y 2d 843, cert, denied 358 U. S. 845; People v. Girardi, 2 A D 2d 701.)
Absent any indication that counsel, assigned or retained, was unfit to defend accused or the representation was such as to make the trial a farce and a mockery of justice, the judgment of conviction would not be vacated on the complaint that counsel was incompetent. (People v. Lester, supra.) Where defendant had consciously made choice of personal counsel, he could not complain that he was dissatisfied with the representation he had received as ground for coram nobis relief. (People v. Hernandez, 8 N Y 2d 345.) An attorney is not required to insure a client as to the ultimate result of the proceeding which he had advised, even if in the subsequent development of affairs it appears that a course other than that adopted would have turned out more advantageous for the client. (Harriman v. Baird, 6 App. Div. 518, affd. 158 N. Y. 691; Gimbel v. Waldman, 193 Misc. 758.) In litigation, a lawyer is'well warranted in taking a chance, and to some extent, litigation is a game of chance. (Byrnes v, Palmer, supra.)
, As to the subpoenas, the colloquy heretofore set forth, indicates by his open admission that defendant had received them from his attorney, filled out "with the necessary details by the attorney. The advice given by his attorney, as stated by defendant in his *774 petition, against calling those witnesses, in the judgment of the attorney, may not be availed of as ground for coram. nobis tó remedy what may have proved to be the negligence or the error of judgment of defendant’s counsel. (People v. Brown, supra. See, also, People v. Guber, 201 Misc. 852.)
From the reference made by defendant in the colloquy regarding his attorney’s ailing condition in explanation of the reason for the nonservice of the subpoenas by the attorney, as heretofore noted, I gain the impression of an undertone to the effect that if not for- such condition the attorney would have been legally obligated to render such service, had defendant insisted upon it under normal conditions. To learn whether any such legal obligation exists at all in the law, at any time, I turn to section 614 of the Code of Criminal Procedure for the answer, seemingly, upon research, the only source of pointed enlightenment in this respect. The part of the provision, material to the question, reads as follows: “ A peace officer must serve, in his county, city, town or village, as the case may be, any subpoena delivered to him for service, either on the part of the people or of the defendant■ * * A subpoena may, however, be served by another person.” (Emphasis supplied.)
' Giving the plainness of the language of this statute what should be its usually accepted meaning (People v. Brancazio, 22 Misc 2d 302), and paying heed to the rule that the code fundamentally establishes the practice in criminal cases, and paying heed to the further rule that service of a subpoena must be applied in accordance with the spirit and the intent of the statute (Matter of Remy Sportwear, supra), I see no room for debate in construing the language to mean that such service by a peace officer in behalf of a defendant is compulsory, while, on the other hand, service by another person is a matter of choice and volition. Consequenty, if this question were now in direct issue, I would, by virtue of the statute, hold that an attorney, who, as such, is only an officer of the court, not a peace officer, could not be held legally bound, under any .conditions,,to serve subpoenas; only a peace officer could be held bound if a defendant or his designated representative were to call upon him to render such service. - -
Considered in its total features, it is clear to me that this application falls within the rule- that “ .if defendant would not be entitled to. relief if the allegations . of -hi-sy petition were to be established,- further judicial- investigation would be pointless.? ’ (People v. Brown, supra, p. 361.)
The .upshot of it all, being anything but convincing, calls for a denial of the motion for post rem relief.
*775 The motion therefore is denied.
The District Attorney is directed to enter an order in eonfQrmanQe with the decision herein and to forward.a certified copy to defendant. ; .....■ . ;■ ■,