THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff; *v.* JOSEPH LAKE, Defendant.

Court of General Sessions of County of New York, February 5, 1948.

*Frank S. Hogan*, District Attorney (*Harold Mayer* of counsel), for plaintiff.

*Anthony F. Mara* of Voluntary Defenders Committee for defendant.

VALENTE, J. This is an application in the form of a writ of error *coram nobis* alleging that a violation of the defendant's constitutional rights invalidates two judgments of conviction entered again t him in this court in 1909 and 1920.

It would ap ear that the application was born of a discussion among some inmates of the prison in which the defendant was confined, in 1943. He testified that a fellow inmate " that studied

law * * * " told him to " look up his record." He sent for and received the records and " they told me there was no lawyer " and " they made up the papers for me."

Armed with the information that these records do not indicate whether he was informed by the court of his right to counsel or to have counsel assigned if he were without means to employ counsel and perhaps inspired by the context of decisions dealing with such omission, the defendant is now certain that he was not guilty of either of these offenses; that regarding the 1909 charge, he had no education and did not understand the charge, so he pleaded guilty and there was nothing he could do; that as to the 1920 charge, he was not advised of his rights and he pleaded guilty. With reference to any other details, he is vague or has no recollection.

I have examined the files and records of this court relating to his convictions of burglary in the third degree on January 6, 1942, of attempted grand larceny in the second degree on June 27, 1928, of violation of section 1897 of the Penal Law on December 1, 1920, of burglary in the second degree on June 22, 1909, and the probation reports submitted in connection with his January 6, 1942, and December 1, 1920, convictions of which I take judicial notice.

His conviction in 1942 constituted his fifth felony conviction and came less than nine months after his parole from State prison on a sentence of life imprisonment imposed as a result of his 1928 conviction.

Considering first the 1920 conviction attacked by the defendant, we have nothing but the bald assertion by the defendant that he was not advised of his rights, had no counsel, and pleaded guilty.

A witness who was a member of the Voluntary Defenders Committee in 1920, testified for the People on this hearing. This committee functioned in this court in 1920, furnishing counsel to indigent defendants. The witness testified that it was the practice of the clerk of the part in which the plea was taken to inquire if the defendants were represented by counsel, if the defendant had means to retain an attorney and if he did not or could not, the court would assign an attorney, in most cases the Voluntary Defenders. In another proceeding before me (People v. Shapiro, 188 Misc. 363), another member of the same committee offered substantially similar testimony.

The petitioner's assertion that he has little or no education is palpably true concerning formal education. It is equally true, however, that he has obtained an extensive informal edu-

cation through his many impacts with the law and consequent criminal court appearances and prison terms. Preceding the sentence imposed upon him in 1920, he had been convicted on four different occasions, twice as a juvenile and twice for felonies, and had served many years in prison. It is significant that he testified that he had counsel when he was convicted in White Plains County Court in 1915, but did not remember whether the court asked if he wanted a lawyer but he supposed they appointed him.

One must be credulous to accept, without qualification, the defendant's version of what transpired on the occasion of his convictions in 1909 and 1920. On the stand, he denied possession of a gun in 1920 and denied telling the probation officer that he had a gun and drew it in self-defense, despite the fact that the probation report so indicates. His extreme vagueness when questioned about the nature of his crimes is almost in inverse ratio to the certainty of his apposite answers to questions involving the denial of his constitutional rights. It is not inconceivable that this certainty is inspired by the fact that the records are silent on this subject, and aided, evidently, by an assist from the " man that studied law " and also " made up the papers for me."

True, the records of both convictions are silent as to whether or not the petitioner was interrogated concerning his desire for, or informed of his right to counsel but no rule, requiring a notation of such interrogation on the record, has come to my attention.

Every avenue of exit should be available to a prisoner illegally sentenced, but the presumption of regularity, attaching to a judgment of conviction, is not to be dissipated in an area of conjecture or expedient answers.

No attempt is made here to postulate a rule that will produce the sesame sought by this kind of application. Each case, of necessity, must turn on the facts peculiar to it. The conclusion here reached is that the omission of the records to indicate that a defendant had counsel or was advised of his rights, supplemented many years later by his testimony that he was not advised of his rights, is not sufficient in and of itself to rebut the presumption of regularity attaching to judgments of conviction.

As to the 1920 conviction, I find that the defendant has failed to support the burden imposed upon him of sustaining his allegations by a fair preponderance of credible evidence (*Hawk* v. *Olson,* 326 U. S. 271; *Walker* v. *Johnston,* 312 U. S. 275, 286;

*Johnson* v. *Zerbst,* 304 U. S. 458) and has therefore failed to rebut the presumption of regularity that this conviction carries. (*People ex rel. Asaro* v. *Morhous,* 268 App. Div. 1016; *People ex rel. Kruger* v. *Hunt,* 257 App. Div. 917; *Johnson* v. *Zerbst, supra.*)

Similarly, the defendant fails with respect to the 1909 conviction. I do not know what happened in 1909 and I am not too sure that the defendant does but in the absence of any evidence more convincing than the defendant's assertion, thirty-nine years later, that his constitutional rights were invaded, I elect to believe that this court performed its duty.

Accordingly, this application is, in all respects, denied.