THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* ABRAHAM CHAIT, Respondent.

First Department, March 17, 1959.

*H. Richard Uviller* of counsel (*Richard G. Denzer, Bernard L. Friedman* with him on the brief; *Frank S. Hogan, District Attorney*), for appellant.

*Maurice Edelbaum* (*Chester E. Kleinberg* with him on the brief), for respondent.

BOTEIN, P. J.  A judgment of the Court of General Sessions of the County of New York, entered May 31, 1917, convicting petitioner of the crime of grand larceny in the second degree upon his plea of guilty, has been vacated by the granting of a writ of error *coram nobis*.  The court below held that upon the hearings before it petitioner had successfully sustained the burden of proving that he had never been represented by counsel nor advised of his right to counsel at any stage of the proceedings, which took place over 40 years before.  The People appeal.

It is fundamental that a defendant charged with the commission of a crime be accorded every constitutional safeguard.  The basic right to have the aid and advice of counsel is paramount among these safeguards (*Williams* v. *Kaiser,* 323 U. S. 471; *People* v. *McLaughlin,* 291 N. Y. 480).  The failure to accord a

defendant the opportunity to avail himself of that right vitiates all further proceedings and any judgment resulting from such failure must be vacated, no matter what impregnability it may appear to have acquired with the passage of time (*Johnson* v. *Zerbst,* 304 U. S. 458; *Matter of Bojinoff* v. *People,* 299 N. Y. 145). The party who asserts that he has been deprived of that right must be given every reasonable opportunity to establish the truth of his assertions. Thus, it has been laid down as a guiding principle in *coram nobis* proceedings that when the sworn assertions of a defendant that he was never accorded the right to counsel are not incredible on their face and are not conclusively shown by unquestionable documentary proof to be false, a full hearing is required to test the issues thus raised (*People* v. *Richetti,* 302 N. Y. 290; *People* v. *Langan,* 303 N. Y. 474; *People* v. *Lain,* 309 N. Y. 291).

Once a hearing is granted, however, the petitioner has the burden of proving deprivation of his constitutional rights (*People* v. *Oddo,* 283 App. Div. 497; *People* v. *Barber,* 276 App. Div. 1040). His contentions must be established clearly and convincingly, by a preponderance of the credible evidence (*People* v. *Milo,* 4 A D 2d 679; *People* v. *Adams,* 1 A D 2d 783; *People* v. *Grieshaber,* 285 App. Div. 958, cert. denied 350 U. S. 1009). The burden is at times a heavy one, and appropriately so, for judgments of long standing are not lightly to be overturned years, or even, as in this case, more than a generation after the event, when witnesses may no longer be available or can no longer be expected to recall the circumstances surrounding the entry of judgment in one particular case. This holds true especially for the People's witnesses, who are usually judicial or nonjudicial court personnel involved in the processing of thousands of cases in the intervening period of time.

The very existence of the judgment in and of itself gives rise to a strong presumption of regularity— a presumption that those charged with the administration of justice have performed their duties properly (*People ex rel. Asaro* v. *Morhous,* 268 App. Div. 1016, appeal dismissed 294 N. Y. 694; *People* v. *Lake,* 190 Misc. 794, appeal dismissed 299 N. Y. 675). Such a presumption will give way only to substantial contrary evidence (*People* v. *Richetti,* 302 N. Y. 290, 298).

In the event that such proof is submitted by a petitioner destructive of the presumption that the constitutional proprieties were observed, the People can no longer rely on the fact of the conviction itself, but must come forward with independent evidence to sustain its regularity (*Matter of Bojinoff* v. *People* 299 N. Y. 145, 150, 151, *supra*). Such evidence may consist of

stenographic minutes, docket entries, testimony of participating parties, or independent recollection. (See Frank, Coram Nobis, § 4.02, subd. [b].) If the additional evidence tends to support the regularity of the judgment, the petitioner must then establish failure to afford him the rights and protection guaranteed him by State and Federal Constitutions and statutes by a preponderance of the entire evidence. The facts in every case must be tested against these standards.

Petitioner obtained a hearing on his application for *coram nobis* by alleging in his petition that having been arrested on charges of grand larceny and receiving stolen property, he was not represented by counsel and was never advised of his right to counsel, either upon his arraignment in the Magistrates' Court, upon his arraignment in the Court of General Sessions, upon his plea of guilty to grand larceny in the second degree, or upon sentencing. He further alleged that although the name "Abraham Rosenberg" (*sic*) appeared on a certified copy of the indictment as his lawyer, the records of the Appellate Division and the Court of Appeals failed to show that at the critical times any attorney by that name was qualified to practice. Finally, he alleged that although the court records showed that some six weeks prior to sentencing one Herman Rosenblum, Esq., of 132 Nassau Street, New York City, had filed a notice of appearance on his behalf, he did not know that attorney, had never retained him and had never been represented by him.

Hearings were thereupon held to take testimony as to the issues thus raised. Petitioner testified at the hearings that he was 17 years of age at the time and that he had a clear and positive recollection that at no stage in the proceedings did he have an attorney nor was he ever advised of his right to be represented by counsel. Apart from his repeated assertions to such effect, on all other points petitioner demonstrated very little actual recollection of the events of the past. Certain that he had never been advised of the right to counsel, his memory faltered badly on most other contemporaneous matters. Among other things, it was significant that he had no recollection that any of his four codefendants were represented by counsel in the Magistrates' Court and upon the occasion of their all pleading guilty in the Court of General Sessions, although the record clearly shows, and it is undisputed, that they were in fact represented by counsel who were present at the proceedings.

Testimony of this nature 40 years after the event, weighed in the light of petitioner's interest, desire and ability to recall the details, can be an unsatisfactory and unreliable basis upon which to vacate a judgment of long standing. In making the deter-

mination, petitioner's testimony, standing by itself, although positive and unequivocal on its face, is not entitled to the deference paid it by the court below; and consideration must be given to the other evidence which was adduced.

The original indictment lists the names of the five defendants in the case, and across the top of the indictment, next to the number assigned to each defendant, appeared the name of an attorney. Alongside the numeral 4, which was the number under which petitioner was listed, there appears the legend " Abraham Rosenblum P ". The indictment indicates that petitioner pleaded not guilty on February 17, 1917, that he changed his plea to guilty on March 26, 1917, and that he received a suspended sentence on May 31, 1917. In connection with the indictment, the *New York Law Journal* of March 26, 1917 includes the name " A. Rosenbloom " as one of the attorneys for the defendants. At the foot of the indictment is the notation " Notice of Appearance Filed by Herman Rosenblum, 132 Nassau Street for #4 — Chait (4654 Beekman) Apl. 18/17 ".

To support his assertions that he was never represented by counsel, and to contradict this documentary evidence that one or more attorneys named Rosenblum appeared on his behalf, petitioner relied on the records of the Court of Appeals which showed that during the years 1898 to 1917 there were only three attorneys admitted to the Bar whose names might correspond with the docket notations.

The first, Abraham Rosenblum, a teacher prior to his admission to the Bar, was admitted to the First Department in the year 1900. He was listed as a lawyer in the New York Telephone Directory in 1901 and 1902, with offices at 21 Park Row, after which there were no further telephone listings. He continued to be listed in the City Directory as a lawyer until 1905. Records of the Board of Education indicate that he was a full-time teacher of stenography and typing in the New York City high schools from 1901, with a residence in Manhattan, until shortly before his death in Hasbrouck Heights, New Jersey in 1921. At that time there was no prohibition against such a teacher practicing law.

The second Abraham Rosenblum was admitted to practice in the First Department in 1907. He maintained an office at 320 Broadway and was the only attorney by that name listed in the telephone book from 1910 to 1917. Presently a resident of Florida, he testified in this proceeding that his practice consisted of Surrogate's matters, real estate and corporate law, and that in his entire career he was retained in only one criminal case involving the charge of violation of the fire laws. He testi-

fied directly that he had never represented petitioner nor appeared for him in any proceeding.

The third possible representative, Herman Rosenblum, was admitted to practice in 1914 and maintained an office for the practice of law at the address appearing on the indictment. This attorney did have some criminal practice, but he had no recollection one way or the other as to whether he had represented the petitioner in 1917. His old records had all been destroyed. He had no recollection of having ever appeared before Judge MULQUEEN, who presided over the proceedings in the Court of General Sessions, but he admitted that it would be possible that he might have represented petitioner without any present recollection of it.

Though the People called as witnesses the clerk of the part in which petitioner was arraigned and pleaded guilty, and the attorneys who represented petitioner's codefendants, understandably enough none of them had any independent recollection of the 1917 proceedings which would corroborate the docket entries. Considering the thousands upon thousands of indictments and arraignments which have been processed in the Court of General Sessions since then, it could not be expected that the details of any but the most unusual case could be recalled. For the most part the testimony of the People's witnesses was necessarily confined to their recollections of the general practice of the court during those years. Such proof in and of itself is of little value in determining whether the general procedures have been followed in a particular case (*Matter of Bojinoff* v. *People,* 299 N. Y. 145, *supra*; cf. *People* v. *Boehm,* 285 App. Div. 245, affd. 309 N. Y. 362).

There remains for consideration whether the evidence as to the availability of the listed attorneys cancels out the docket entries indicating petitioner was represented by them or one of them. The court records indicate petitioner was represented by an Abraham Rosenblum, and the " P " next to the name indicated that the attorney was actually present in court. The proof reasonably established that the second Abraham Rosenblum, admitted in 1907, had never represented petitioner. His attempt to overcome this documentary record by proof complementary to his stark oral assertions therefore rests entirely on the speculation that the first Abraham Rosenblum, admitted in 1900, was not practicing law in 1917 and that Herman Rosenblum might not have appeared for him despite the notations appearing on the indictment. These, indeed, are inferences which may be distilled from the evidence, but counter-inferences are as plausibly

available to the People. Thus, it is quite possible that the first Abraham Rosenblum, although deriving his regular income from the profession of teaching, did practice law, as he was permitted to do, on an occasional part-time basis; or that Herman Rosenblum, whose name, address and phone number are on the indictment, in fact handled the entire case, and the initial entry of the name Abraham Rosenblum was a clerical error. It certainly would be an extraordinary coincidence if two of the only three Rosenblums practicing in the state appeared in the same case for petitioner. It is more likely that only one attorney named Rosenblum represented petitioner, and that the clerk, possibly confused by the fact that the first names of this defendant and one of the codefendants were both Abraham, erroneously gave attorney Rosenblum the same first name.

The very fact that the answer to the question on the Magistrate's arraignment records as to whether defendant desired counsel was left blank could be taken as an indication that defendant was in fact represented by counsel, rendering the asking of this question unnecessary (*People* v. *Varelli*, 277 App. Div. 887). It would also appear unlikely that an attorney for the Voluntary Defenders, the forerunner of the Legal Aid Society, would appear for some of petitioner's codefendants and not for petitioner unless petitioner had in fact been represented by counsel. The record is clear that whether or not there was an Abraham Rosenblum representing petitioner at earlier stages of the proceedings, Herman Rosenblum entered an appearance prior to sentencing. Representation by counsel even at this stage of the proceedings would sufficiently protect the constitutional rights of a defendant (*Canizio* v. *New York*, 327 U. S. 82), since a plea of guilty could still be withdrawn and a trial demanded. It is most unlikely that petitioner would let over 40 years elapse before first raising the contention that he had not been represented, despite the fact that a year after the proceeding in question he had been sentenced as a second felony offender. Also, the alleged lack of representation was never claimed in numerous subsequent applications to the Governor for clemency.

A conviction of long standing cannot be vacated on the basis of the unsubstantiated recollection of a defendant buttressed by a series of speculations. Basic policy considerations require much stronger evidence than was presented here before a conviction whose regularity is supported by documentary records will be vacated. The very concepts of civil liberties invoked by petitioner will be reduced to nothing more than feeble platitudes

unless applied with good and fair judgment. On this record petitioner has failed to sustain his burden of establishing clearly and convincingly, by a preponderance of the credible evidence, that he was not represented by counsel and never advised of his right to counsel.

The order granting the writ of error *coram nobis* and vacating the judgment of the Court of General Sessions of May 31, 1917 should be reversed on the law and the facts and the motion for a writ of error *coram nobis* denied.

Rabin, J. (dissenting). I dissent and vote to affirm. The court below, based upon the proof before it, held that defendant had overcome the presumption of the regularity of the proceedings leading to his conviction and that it therefore became the obligation of the People, by independent evidence, to establish regularity. The proof offered by the People was held insufficient to meet that burden. On the record before us I can find no basis for interfering with the court's finding in that respect.

Defendant swore unequivocally that he had not been advised of his right to counsel and that he had not been represented by counsel at any stage of the proceedings. The People attempted to prove that he had in fact been represented by counsel, but the evidence on that score was weak, speculative and unconvincing. Moreover the court records which were introduced in support of the People's case, were to say the least, confusing. In the circumstances the court was justified in setting aside the conviction (*People* v. *Conroy*, 1 A D 2d 513; *People* v. *Brillian*, 3 A D 2d 318; *People* v. *Lain*, 309 N. Y. 291).

Stress is placed on the fact that this conviction was had 40 years ago with no attempt to obtain relief during that period. I do not see why that should be held against the defendant. It is but natural that defendant — grown older and who during the 40 years since his conviction has established himself and raised a family — would now feel more keenly the onus of the conviction and would want to have that blot erased from his record. Besides, it may be observed that *coram nobis,* insofar as it affords a means of relief in cases where a defendant did not have the safeguard of being represented by counsel, is of comparatively recent development.

In any event the problem of determining the questions of fact and credibility rested with the trier of the facts. We cannot say that the court was wrong in giving credence to defendant's testimony, particularly in view of his record over 40 years, showing no convictions. In the final analysis the People's position is that the court erred in resolving the disputed questions

of fact in defendant's favor. However, unless the record indicates that there was no basis for the court's determination or that the weight of evidence is clearly against it, we should not substitute our judgment on the facts (*People* v. *Seidenshner,* 210 N. Y. 341, 359–360; *People* v. *Atlas,* 183 App. Div. 595, 600). I do not believe the determination in this case is defective in either respect.

The order should be affirmed.

BREITEL, McNALLY and BERGAN, JJ., concur with BOTEIN, P. J.; RABIN, J., dissents in opinion.

Order reversed on the law and on the facts and the motion denied.