Robert E. Dempsey, J,
Defendant moves, on the eve of trial, to dismiss the 25-count indictment against defendant. In the notice of motion the grounds stated are: (a) Sections of the Judiciary Law (not applicable to the said indictment, to wit: section 596, subdivision 1 of section 609, and section 661) are unconstitutional; (b) “discriminatory practices in administering the rules, regulations and statutes ” of the Judiciary Law by the Westchester County Commissioner of Jurors are detrimental and prejudicial to the rights of the defendant. Coupled with these grounds, the movant sought further relief by way of compelling the production of certain records pertaining to the Grand Jury panel and a hearing to support the contentions in the motion. At the time of the return of this motion, defendant was aware that this case had been set for trial for April 4, 1967 and that part of the prospective trial jurors were notified of their desired attendance for possible service.
The request for a hearing and production of the records is denied. A similar motion for the production of the 1966 Grand Jury list for Westchester County was denied by the Appellate Division, Second Department (Matter of Ruppert v. County Court, 28 A D 2d 650).
The challenged sections of the Judiciary Law, referred to by defendant, to wit: section 596, subdivision 1 of section 609, and section 661, are not pertinent to the issue sought to be raised. The first two sections relate solely to New York City and the last is a form for a proposed questionnaire.
Assuming that counsel intended to attack, as unconstitutional, sections of the Judiciary Law set forth in article 18 thereof as they pertain to Westchester County, the motion papers are deficient in presenting any fact in support of the allegations. The affidavit of the attorney is at the most conclusory, as appears from the only relevant portion of said affidavit; i.e., “upon information and belief the rules, etc. are improperly administered * # * upon information and belief, the Grand Jury * * * was chosen by techniques of discriminatory selection * * * it would seem that the Jury Commissioner is directed to exercise his discretion against the selection of members of minority groups and the selection of the poor.” There is not one iota of fact to be found in the affidavit, even as to the sources of the information and belief. The unsupported charges of dereliction on the part of a public official, as portrayed in the affidavit submitted on this motion, are insufficient to overcome *847 á presumption that those charged with the administration of justice have performed their duties properly. (People ex rel. Asaro v. Morhous, 268 App. Div. 1016, app. dsmd. 294 N. Y. 694; People v. Lake, 190 Misc. 794, app. dsmd. 299 N. Y. 675; People v. Richetti, 302 N. Y. 290, 298.) Though the quantum of support needed on a motion to grant such a hearing as here requested is to be deemed less in quantity and quality than must be produced to support the contentions on a trial of the issues, there must be some factual showing to raise an issue. That defendant has a constitutional basis for assailing the bastion of the Grand Jury as a matter of fact must appear somewhere in the motion. (People v. Prior, 294 N. Y. 405, 412.)
Defendant injected into the motion the decision of the United States Court of Appeals for the Second Circuit, in Chestnut v. People of State of New York (370 F. 2d 1). Here defendants sought removal of their causes to the Federal court, alleging an unconstitutional “make-up” in the State Grand Jury. Phases of the property qualifications of a New York State juror being worth at least $250 (personal or real property) are commented on (but not passed upon) by the Federal Bench with the observation in footnote 13 of said opinion as raising “interesting questions for resolution”. The $250 property qualification for jury service contained in the New York Judiciary Law (§ 504) is by statute applicable to a grand juror’s qualification to serve. (Judiciary Law, § 684; Rules of App. Div. 2d Dept., ADM 6-30, eff. July 1, 1964.) The record on appeal in People v. Fay (296 N. Y. 510) sheds some light on this question. There the defendants not only opposed the application made by the District Attorney of New York County for a special panel, but challenged the special ‘ ‘ blue ribbon ’ ’ jury panel (former § 749-aa of the Judiciary Law). In the words of the challenge, one of the grounds advanced was that the special jury panel sought excluded from jury service all persons residing in “those portions of the city largely inhabited by poor persons ” and later that the selection was obtained “ by the virtual exclusion from said jury list of trade union representatives, laboring people and women ”. Factual support for this contention was not found by the hearing Judge and the case ultimately received extensive review in the Supreme Court of the United States (332 U. S. 261). Although the specific question posed was a challenge to the constitutionality of the special “blue-ribbon jury”, the court noted that, among the required qualifications of a juror in New York State, was the $250 property qualification (p. 266). Expressing regret that it was hampered by the lack of findings of fact from the trial *848 court on the subject, the court commented (p. 272) that it was under obligation to resolve the constitutional question after a full review of the evidence and that one of these questions was the fact that “ laborers, operatives, craftmen, foremen and service employees were systematically, intentionally and deliberately excluded from the penal ”. Discussing this contention (pp. 273-276) the court notes that (in a rhetorical position) the subject of the financial worth of a juror was posed “ How many could not meet the property qualification? ” It serves no useful purpose herein to emphasize the many facets of discussion in this case, but as one of the dissenting Justices pointed out (p. 299): “ There is no constitutional right to a jury drawn from a group of uneducated and unintelligent persons. Nor is there any right to a jury chosen solely from those at the lower end of the economic scale. But there is a constitutional right to a jury drawn from a group which represents a cross-section of the community.” (To the same effect, People v. Dessaure, 299 N. Y. 126; People v. Agron, 10 N Y 2d 130; Louisiana v. United States, 380 U. S. 145; Swain v. Alabama, 380 U. S. 202, 208, upholding the method of jury selection in Alabama in a ruling that the jury roll need not be the perfect mirror of the community or accurately reflect the proportionate strength of every identifiable group.) The mere showing that a class was not represented is not enough. There must be a showing that its absence was caused by discrimination. (Fay v. New York, supra, pp. 284-285.)
The voting cases involving the unconstitutional pressures of poll taxes, such as Harper v. Virginia Bd. of Elections (383 U. S. 663) are distinguishable. The nub of the decision in this last-mentioned case is to be found in the concluding paragraph of the decision: “For to repeat, wealth or fee paying has, in our view, no relation to voting qualifications; the right to vote is too precious, too fundamental to be so burdened or conditioned.” This court does not find a cogent similarity between these cases and the juror qualifications standard of the New York law as suggested by the dictum in the Second Circuit’s decision in Chestnut. There is no fee extracted from a prospective juror, nor is “wealth” synonymous with $250. Television aerials sprout with abandon from dwelling structures of all styles, classes and grades, suggesting occupant possession of this now fundamental national commodity.
There is complete agreement in the courts on the thesis that there must be some reasonable standards of qualifications and there must be a reasonable uniformity of application. It does not seem unreasonable in our ‘ ‘ free society ’ ’ to have a minimal *849 ownership in something real or personal to invest a person with the privilege of performing a vital public function, such as being a member of the Grand Jury or trial jury, to whom the free rights of individuals, as well as great public interests, are committed for resolution in the respective spheres granted to these bodies by custom and statute.
Motion denied.