Richard F. Daly, J.
Defendant moves to dismiss Grand Jury indictment Nos. 4028, 4029, 4146, 4280 and 4281, all of the year 1960, on the grounds that subdivisions 3 and 6 of section 596 [subd. 3 noAV repealed; subd. 6 renumbered subd. 5] and section 609 of the Judiciary Law, under which the Grand Jury returning *874 the indictments was chosen, are unconstitutional and invalid “ by reason of repugnancy to the due process clause and equal protection clauses ” of the Fourteenth Amendment of the Constitution of the United States and the Constitution of the State of New York, in that as to subdivision 3 of section 596 “ the very poor are excluded by this statute from service on a grand jury,” that as to subdivision 6 of this section and section 609, “ selection of grand jurors and potential grand jurors is left to the arbitrary whim or caprice of the County Clerk,” and on the ground that the grand jury list under consideration “ was deliberately chosen and selected in such a manner and from such sources as not reasonably to reflect a cross section of the population of Kings County suitable in character and intelligence for grand jury service, and particularly that members of low income groups, Negroes, Puerto Ricans and persons of Italian and Jewish origin and extraction were deliberately, systematically and illegally excluded therefrom ’ ’ by and according to the applications of standards for qualification other than those prescribed by law, all in violation of section 5 of article IX [now art. XIII, § 13, subd. (a)] of the Constitution of the State of New York and section 592 of the Judiciary Law.
Subdivision 3 of section 596 of the Judiciary Law provides that the juror must be the owner of real or personal property of the value of $250 or the husband or wife of one who is worth such amount. Subdivision 6 provides that the prospective juror must be intelligent, of sound mind and good character, well-informed, able to read and write the English language understandingly. Section 609 sets forth the method of selection of grand jurors within the City of New York. Under this section, the County Clerk shall make special investigation of persons qualified to serve as trial jurors and shall require the prospective grand jurors to be fingerprinted. Such fingerprints are forwarded to the Central Bureau of Criminal Investigation in Albany. The Commissioner of Correction makes a report to the County Clerk as to the criminal record of the prospective grand juror. A person whose record contains a conviction for a felony or a misdemeanor involving moral turpitude may not serve as a grand juror. The section further provides that the County Clerk shall make up a list of those prospective grand jurors who he deems are qualified to serve.
One who assails the constitutionality of a State statute must carry the burden of showing that it does not rest upon any reasonable basis but is essentially arbitrary.
The basic principle which underlies the entire field of legal concepts pertaining to the validity of legislation is that by *875 enactment of legislation a constitutional measure is presumed to be created. It has been said that the presumption of constitutionality is the postulate of constitutional adjudication; that every act of the Legislature is presumed to be in harmony with the Constitution unless the contrary clearly appears. The presumption that the determination of the Legislature is supported by facts known to it obtains unless facts judicially known or proved preclude that possibility.
The successful assailant must be able to point out the particular provision that has been violated and the ground upon which it has been infringed. The rule is fixed that a party who alleges the unconstitutionality of a statute normally has the burden of sustaining his claim and, to do so, he must overcome the presumption favoring the constitutionality of the statute.
A statute or ordinance will be held fatally defective from a constitutional viewpoint only in a clear case. The challenged legislation must be manifestly, undoubtedly, clearly, plainly, substantially and palpably inconsistent with constitutional standards. There must be a clear usurpation by the Legislature of a prohibited power before a statute can be pronounced unconstitutional and void; its invalidity must be shown conclusively (see 8 N. Y. Jur., Constitutional Law, §§ 59, 62, 77 and 79).
The Supreme Court has said: c ‘ The very idea of a jury is a body of men composed of the peers or equals of the person whose rights it is selected or summoned to determine; that is, of his neighbors, fellows, associates, persons having the same legal status as that which he holds.” (Strauder v. West Virgima, 100 U. S. 303, 308.)
There is no constitutional right to a jury drawn from a group of uneducated and unintelligent persons, nor is there any right to a jury chosen solely from those at the lower end of the economic and social scale.
Defendants have no vested rights in any particular method of selection so long as the resulting array be not the product of intentional discrimination. When traditionally correct standards of selection have been honestly applied, there is no infraction of constitutional guarantees no matter what the result (United States v. Flynn, 216 F. 2d 354; Thomas v. Texas, 212 U. S. 278).
The jury roll need not be the perfect mirror of the community or accurately reflect the proportionate strength of every identifiable group. The mere showing that a class was not represented *876 is not enough. There must be a showing that its absence was caused by discrimination (Fay v. New York, 332 U. S. 261).
Defendant’s main argument concerning, the constitutionality of the afore-mentioned sections is based • on the importance he attaches to the dictum in the case of Chestnut v. People of the State of New York (370 F. 2d 1). In that case the appellants specifically challenged sections 596 and 609 of the New York Judiciary Law. They alleged that the method of selection results in the exclusion of a great majority of qualified Negro and Puerto Rican citizens and members of low income groups and argued that the Grand Jury, before which they were called to testify, was an illegally constituted tribunal and without authority since it was selected in violation of the equal protection clause of the Fourteenth Amendment. The court in that case affirmed an order of the United States District Court for the Southern District of New York remanding the matter to the Criminal Court of the City of New York, holding that since section 596 does not on its face discriminate in terms of race, appellants’ claim of violation of the equal protection clause does not qualify this case for removal. The court held (p. 5) that the alleged denial of their civil rights was not ‘ ‘ manifest in the formal expression of state law.” After so finding, the court further stated (pp. 6-7): “ It should be noted, however, that our conclusion that appellants have not met the requirements of § 1443(1) for removal to a federal tribunal at this juncture of the state’s prosecution, is in no manner a determination by this Court that §§ 596 and 6091 of the New York Judiciary Law are constitutional. We are confident that in light of recent decisions by the Supreme Court and federal appellate courts in other Circuits, that New York will give careful consideration to the very serious constitutional issues that appellants raise concerning the State’s Grand Jury selection procedures. ’ ’
Subsequently a hearing in the Chestrmt case on the Grand Jury selection procedures in New York County was held before Mr. Justice Murtagh (Sup. Ct., N. Y. County) who denied the motion to quash the indictment, stating in a memo opinion (N. Y. L. J., April 5,1967, p. 18, col. 6): “ Want of proportional representation of groups not proven to be deliberate and intentional is not constitutionally offensive (Froessel, J. in People v. Agron, 10 N Y 2d 130, 141, citing Fay v. New York, 332 U. S. 261, 291; Akins v. Texas, 325 U. S. 398, 403).”
The observation by the Federal court in the Chestrmt case concerning the statutes under consideration is no formed decisive resolution, no adjudication and no professed or deliberate deter *877 mination and lends little or no support to the defendant. This court has never held itself bound by any part of an opinion which was not needful to the ascertainment of the question between the parties.
In Fay v. New York (supra, pp. 270, 272) the court, in passing on New York statutory standards, prescribed for a special jury panel, which provided for the same qualifications as those here challenged, stated: “ We fail to perceive on its face any constitutional offense in the statutory standards prescribed for the special panel. The Act does not exclude, or authorize the clerk to exclude, any person or class because of race, creed, color or occupation. It imposes no qualification of an economic nature beyond that imposed by the concededly valid general panel statute. * * * We find nothing in the standards New York has prescribed which, on its face, is prohibited by the Constitution.”
In People v. Dessaure (299 N. Y. 126,132) the court considered the $250 property requirement and character requirements of the Judiciary Law, and in accepting the finding of the County Clerk that there was no systematic or intentional exclusion of jurors, wrote: “ The relevant statutes, however — here unchallenged by the defendant — required no fixed representation of racial or other groups on the grand jury list in question. Those statutes authorized the Board of Judges to certify as grand jurors only persons found by them to be ‘ Free from all legal exceptions; of fair character; of approved integrity; of sound judgment; and well informed ’ ”.
In this case the defendant moved to vacate an indictment upon the ground that Negroes in Nassau County were unconstitutionally discriminated against in the selection of grand jurors. The motion was denied. The Appellate Division affirmed, and the Court of Appeals held that the defendant had failed to show any systematic intentional exclusion from the Grand Jury of any identifiable group. The Court of Appeals, thus, inferentially held that the statutes dealing with the methods of selection of grand jurors in New York were constitutional. (Cert. den. 337 U. S. 949 [1949].)
In People v. Agron (10 N Y 2d 130) a claim was advanced that defendants had been denied their constitutional right to be indicted and tried by juries from which qualified persons of Puerto Rican birth and descent were not illegally and improperly excluded. The Court of Appeals said (p. 141): “ To sustain this contention, appellants were compelled to show that there had been systematic and intentional exclusion of persons of Puerto Rican ancestry from the two panels (People v. Dessaure, 299 *878 N. Y. 126, cert. den. 337 U. S. 949). This they failed to do. It has not been shown that any otherwise qualified person was denied the right to be on one of these panels by virtue of his Puerto Eican ancestry. Indeed, special efforts were made to obtain Puerto Eicans, and there were several persons of Puerto Eican birth listed on both the Grand Jury and Special Jury panels. Want of proportional representation of groups not proven to be deliberate and intentional is not constitutionally offensive (Fay v. New York, 332 U. S. 261, 291; Akins v. Texas, 325 U. S. 398, 403).” (Emphasis supplied.) (See, also, Swain v. Alabama, 380 U. S. 202.)
Again, the Court of Appeals appears to have sustained the constitutionality of the statutory provisions dealing with the selection of grand juries in' New York State. (Cert. den. 368 IT. S. 922 [1961].)
A similar decision and finding had earlier been made by Judge Medina in United States v. Foster (83 F. Supp. 197) in which the defendants had challenged the Southern District Federal court system of picking jurors. That system operates under the New York State Judiciary Law provisions and specifically under section 596. The court, in passing on the $250 property qualification, stated (p. 208): “These, or similar provisions, however, have been part of the statutory pattern applicable to juries generally for many years. The claim that such provisions are violative of the Fifth and Sixth Amendments to the United States Constitution seems frivolous. If these provisions be deemed for any reason unwise, this is a matter for the Congress.” (See, also, People v. Ruppert, 53 Misc 2d 845.)
This court is aware of decisions in the Federal courts critical of jury selection systems in certain southern States and decisions holding unconstitutional certain requirements for jury service in those States. However, until such time as an appellate court strikes down as unconstitutional any of the statutes dealing with the mode of jury selection in this State, I am constrained to follow the present state of law as enunciated in the cases herein-before mentioned.
Under the statute, the certification of the Grand Jury list has over the years been the responsibility of the Judges alone. In the years 1958 to and including 1962 the Kings County Jury Board was composed of three Judges and the County Clerk. They met in the month of November of each year, examined the qualifications and applications made by each prospective juror and from these selected the grand jurors who were to serve the following year. No charge of discrimination has been made against them nor has anyone imputed to them a failure in per *879 ception of their plain statutory and constitutional duty. (Cf. Civil Rights Law, § 13; N. Y. Const., art. I, § 11; U. S. Const., 14th Amdt. See People v. Dessaure, supra.)
Judges who sat on Kings County Jury Boards between the years 1958 and 1962 testified that they never disqualified a prospective grand juror because he or she was a Negro, Puerto Bican or of Italian or Jewish origin and extraction, or was a daily or hourly wage earner.
Under section 590 of the Judiciary Law and the rules in relation to the jury system in the City of New York adopted by the Appellate Division of the First and Second Departments, pursuant to the provisions of section 592 of the Judiciary Law, the County Clerk of Kings County is made the sole judge of the qualifications of jurors6 in Kings County. The County Clerk of Kings County, in order to ascertain names of persons eligible as jurors, consulted the voters’ registry lists. This method is approved by section 594 of the Judiciary Law. “ The standard that the County Clerk is called upon to apply may be of ecumenical character but it is he who must initially construe and determine the limitations of the language of the statute, * * * The administrative determination is to be accepted by the courts 11 if it has ‘ warrant in the record ’ and a reasonable basis in law ’ ”. (Matter of Lewinson v. Crews, 49 Misc 2d 1050, 1051.)
Much latitude in the choice of jurors must necessarily be placed upon the officials who administer the jury system (United States v. Foster, supra).
By section 609 of the Judiciary Law (the section which sets forth the method of selection of grand jurors within the City of New York), the County Clerk is authorized to make special investigations of persons qualified to serve as trial jurors and to determine, among other things, whether or not a prospective grand juror has a criminal record. As a judge of the jurors’ qualifications and pursuant to section 596, inquiries made by him in a qualifying questionnaire as to occupation and education, whether he is a tenant on relief or a member of a party that advocates the overthrowing of the Government of the United States or of any State, by force or violence, cannot be said to be an unwarranted extension of his powers. Since the actual drawing of the grand jurors is under the supervision of the Judge or Judges of a court of record designated by the Appellate Division, the questions asked are for the purpose of enabling the County Clerk to determine whether or not the prospective juror meets with the qualifications set forth in the law. There is in the record no evidence of any effort by the County Clerk arbitrarily to exclude persons of a particular classification from the panel *880 of grand jurors. The general presumption is that no official or person acting under an oath of office will do anything contrary to his official duty, or omit anything which his official duty requires to be done (Matter of Marcellus, 165 N. Y. 70, 77; Mandeville v. Reynolds, 68 N. Y. 528, 534; Hartwell v. Root, 19 Johns. 345). In the absence of clear and convincing proof to the contrary, we are bound to presume that the County Clerk performed his duty and that defendant’s rights were not violated (People v. Asaro, 268 App. Div. 1016).
The defendant has failed to rebut the presumption that the Grand Jury was properly empaneled and acted with propriety, and that the indictments are valid (People v. Glen, 173 N. Y. 395; People v. Sexton, 187 N. Y. 495; People v. Sweeney, 213 N. Y. 37; People v. Thomas, 53 Misc 2d 427). Equally strange and of significant importance is the fact that the defendant has not offered any proof as to the financial or ethnic makeup of the panel of jurors who indicted him or how he was in any way prejudiced by their selection.
The defendant does not assert that the Grand Jury as finally empaneled included members who were legally disqualified. Then, too, assuming arguendo that the petit jury panel from which the grand jurors were selected may not have been composed of a cross section of the community as desired, there is no proof offered that the jury that indicted the defendant was not so composed. As stated by Judge Lewis, speaking for the court in People v. Prior (294 N. Y. 405, 411 — 412): “we find in the record no evidence of a sustained, systematic effort by the Trial Justice arbitrarily to exclude persons of a particular classification from the final panel of grand jurors. Additionally, in connection with that conclusion, it may be said that if, during the twelve days while the voir dire examination was in progress, the Trial Justice erred in the exclusion of qualified talesmen from service, such exclusion affords no constitutional ground for the dismissal of the indictments against the appellants when, as in the present case, the grand jury as finally constituted consisted of jurors whose qualifications are not questioned. The applicable rule was stated by Mr. Justice Holmes writing in Rawlins v. Georgia (201 U. S. 638, at p. 640): ‘ Even when persons liable to jury duty under the state laws are excluded it is no ground for challenge to the array, if a sufficient number of unexceptionable persons are present. People v. Jewett, 3 Wend. 314.’ (See, also, Howard v. Kentucky, 200 U. S. 164, 173-174; Brown v. New Jersey, 175 U. S. 172,175; People v. Schmidt, 168 N. Y. 568, 577-578; Dolan v. People, 64 N. Y. 485, 494.) ”
*881 As Chief Judge Lehman said in a concurring opinion (p. 415): “ the exclusion of persons not shown to be disqualified is not sufficient cause to set aside an indictment found by jurors who are qualified.”
The only test to which the Jury Commissioner and the County Clerk are held in strict accountability in making lists of names for grand and petit juries is that of impartiality. (United States v. Ballard, 35 F. Supp. 105.) Where the accused is not shown to have been prejudiced by irregularities in selection of grand jurors and none of the grand jurors is shown to have been incompetent or disqualified, irregularities in the selection of jurymen are to be disregarded. (United States v. Glasser, 116 F. 2d 690.)
If, as stated by the court in People v. Brophy (304 N. Y. 391, 393-394): “the jury as impaneled is an impartial body, no constitutional rights may be said to have been impinged upon, and mere error, not resulting in prejudice, is insufficient to invoke the power of the courts to look behind the indictments in a case not provided by statute (People v. Prior, 294 N. Y. 405; People v. Glen, 173 N. Y. 395; People v. Petrea, 92 N. Y. 128 ; Rawlins v. Georgia, 201 U. S. 638; see, also, People v. Borgstrom, 178 N. Y. 254; Hyde v. United States, 225 U. S. 347, 374). ‘ The defendant’s right is a neutral jury. He has no constitutional right to friends on the jury ’ (Fay v. New York, 332 U. S. 261, 288-289). There is no claim here that any member of the Grand Jury was individually biased or prejudiced against defendants, and hence there can be no prejudice in the exclusion of talesmen, unless it be shown that there was a ‘ sustained, systematic effort by the court arbitrarily to exclude from the final panel persons of a particular classification ’ (People v. Prior, supra, p. 410).”
There is no evidence that different standards of qualifications were applied to the Negroes, Puerto Eicans, and persons of Italian and Jewish origin and extraction, than to the other persons in Kings County.
I find as a fact that the County Clerk and his assistants fairly and honestly endeavored to discharge their duties, and did not discriminate against such group or groups in the selection of jury lists.
When the testimony and the exhibits are viewed in their entirety, they seem to establish beyond peradventure of doubt that no such deliberate, willful and planned discrimination and exclusion, as charged by the defendant, existed in Kings County during the years 1958 to and including 1962.
Undoubtedly, the system used in the selection of prospective grand jurors was not perfect and little effort was made to insure *882 that all groups in the community were fairly represented. But an imperfect system is not equivalent to purposeful discrimination based on race, color, creed or economic standing. (Swain v. Alabama, 380 U. S. 202.)
The burden of proof was not carried by the defendant. The motion to dismiss the indictments is denied.