Joseph Jiudice, J.
This is a motion by the defendant for an order dismissing the indictment herein on the ground that there is alleged to be a systematic and deliberate exclusion of poor Negroes and slum inhabitants from the Grand Jury of this county. The motion, supported by the affidavit of defendant’s attorney, attacks the general composition of and general selection of the Dutchess County Grand Jury.
The issue in this case is whether or not Negroes and poor people were systematically and deliberately excluded from ■serving as grand jurors in Dutchess County.
The testimony in this criminal action revealed the Commissioner of Jurors utilized the permanent personal registration records of the County of Dutchess in order to obtain a list of prospective jurors (Judiciary Law, § 658). This list is prepared by the Dutchess County Tabulating Department which has selected at random the prospective jurors from the 20 towns and 2 cities in Dutchess County at the rate of 10,000 per year. The Commissioner of Jurors also testified that the voter *135 registration list is used in preference to other methods which a,re permissible under the Judiciary Law because of the ease of classification of names according to towns and cities. Moreover, a few individuals who have not exercised their right to vote and whose names do not appear upon the permanent personal registration lists have been added to the petit jury list by personal request. The testimony further revealed that this method was used at the direction of the Appellate Division, Second Department, by order dated June 30, 1964, which order Avas made pursuant to section 684 of the Judiciary Law. The testimony also revealed the Commissioner of Jurors and the Dutchess County Tabulating Department are unaAvare of the race, color, creed, or financial worth of any of the individuals selected, and there are no records or any other information in existence to indicate these factors concerning any prospective juror.
It appears that, following the random selection of names for the petit jury from the permanent voter registration list, the Commissioner of Jurors, folloAving the directive of the Appellate Division, as aforesaid, selected from those previously chosen as petit jurors a list of prospective grand jurors.
The hearing indicated the Commissioner of Jurors sends a questionnaire to the applicant and upon receipt of same, he would then send the prospective grand juror’s name to the Department of Correction for an investigation and, if no problem arose, the Commissioner of Jurors would make up an annual grand juror’s list and submit it to the County Jury Board for its approval. This list of prospective jurors would then be placed in the Grand Jury drum. The Commissioner of Jurors stated every two weeks he would announce to each new panel of petit jurors their eligibility to request questionnaires in order to serve as grand jurors and he also used the neAvs media in order to invite service in the Grand Jury. No selection of the prospective grand jurors was made in proportion substantially to the population of each torva and city within the County of Dutchess pursuant to the order of the Appellate Division, Second Department, dated June 30, 1964, although the order does state, “insofar as may be practicable”. The evidence disclosed no one had any knowledge of the economic, occupational, social, racial or religious affiliation of any prospective juror. The Commissioner of Jurors did recall two Negroes did apply to serve as prospective grand jurors and they qualified and became eligible to serve. The Assistant District Attorney recalled one Negro served on a grand jury during the last year. No one could shed any light on the record as to whether or not poor people had been included in the prospective Grand Jury. *136 The Commissioner of Jurors did testify that a grand juror is selected from the petit jury list and would be qualified for the g’rand jury thereafter.
In deciding the issue presented in this ease, it may be wise to examine the function and the history of the Grand Jury system. Early in the English system of jurisprudence, the King-abused his power and unjustly accused select individuals who he felt had offended him. Eventually, this power to oppress was removed from the King and the accusations of crime could only be made by a Grand J ury which supposedly was composed from a cross section of the individuals living in the community in which the accused resided. The right of an individual to be accused by a group of his peers was one taken from the government in order to protect and to secure the individual against unfounded accusations. Today, the Constitutions of this Nation and this State show the Grand Jury system is a means of protection for the citizen as well as an aid to public justice. Under the Grand Jury system, each man and woman must be accused before a body composed of members of the community and not brought to trial for serious crime unless indicted by a Grand Jury. This gives to every person protection without reference to color, race, financial condition or influence.
Section 652 of the Judiciary Law designates the composition of the County Jury Board and also indicates the selection of grand jurors is a responsibility of the County J ury Board. This selection is mandated by subdivision 1 of section 684 of the Judiciary Law which section gives to the Appellate Division the right to promulgate rules and regulations with respect to the selection of grand jurors in any county in the pertinent judicial department. The Appellate Division of the Second Judicial Department, by order dated June 30, 1964, directed the Grand Jury list be compiled from persons previously selected as qualified to serve as trial jurors, after an examination of the police record, if any, of each prospective grand juror. The selection must be made in proportion substantially to the population of each town and city within the county, and the order further decrees Dutchess County shall have no less than 500 nor more than 700 grand jurors on each annual grand juror list.
Section 223 of the Code of Criminal Procedure of the State of New York defines the Grand Jury as a body of persons, returned at stated periods from the citizens of the county, before a court of competent jurisdiction, and chosen by lot, and sworn to inquire of crimes committed or triable in the county.
The testimony in this case indicates the Commissioner of Jurors in this county, in following the directive of the Appel *137 late Division, not only selected Grand Jury members from the list of qualified trial jurors, but that he, in fact, made a random selection thereof. The Appellate Division order did not compel random selection; however, this court believes that the Commissioner of Jurors has gone a step further in making an impartial selection. It is difficult to imagine a more impartial or constitutional manner of selecting grand jurors than by chance selection from the petit juror list, which itself was composed from voter registration lists. Although the Constitution of the State of New York is silent in defining the method of selection of the Grand Jury, the Constitution of the State of New York does insure to an individual that no person shall be held to answer for a felony unless on indictment of a Grand Jury (N. Y. Const., art. I, § 6). The Legislature of this State has inherent powers to determine the method which shall be followed in order to give reasonable assurance that an impartial Grand Jury will result of qualified jurors who represent a fair cross section of the impartial citizens of Dutchess County (People v. Prior, 268 App. Div. 717, affd. 294 N. Y. 405 [1945]).
The defendant’s argument appears to be based upon the assertion that slum inhabitants and Negroes have been excluded from Grand Jury service. Assuming, for the sake of argument, that the defendant’s characterization of poor Negro slum inhabitants constitutes an identifiable group in the community, the defendant would not be entitled to a prorata representation of such a group upon the Grand Jury which indicted him. The Federal Constitution requires only a fair jury without regard to race. It does not compel a prorata representation of all racial and religious groups (United States v. Curry, 358 F. 2d 904 [1965]). Likewise, there is no constitutional right to a jury composed of uneducated people, nor is there any right to a jury chosen from the people at the lower end of the economic scale (People v. Cohen, 54 Misc 2d 873).
The Supreme Court of the United States has restated the case for impartial juries several times: “ Our notions of what a proper jury is have developed in harmony with our basic concepts of a democratic society and a representative government. For ‘ It is part of the established tradition in the use of juries as instruments of public justice that the jury be a body truly representative of the community. ’ * * * And,- its exercise [the selection of jurors] must always accord with the fact that the proper functioning of the jury system, and, indeed, our democracy itself, requires that the jury be a ‘ body truly representative of the community, ’ and not the organ of any special group or class.” (Glasser v. United States, 315 U. S. 60, 85-86, *138 rehearing den. 315 U. S. 827 [1941]; Thiel v. Southern Pacific Co., 328 U. S. 217 [1945].)
It is the opinion of this court that when the law speaks of a jury of peers, it does not contemplate a jury of persons of identical race or similar background. It does contemplate, however, a random selection of persons in the community reflecting a normal cross-section thereof. The mere showing, therefore, of a particular class of people as not represented is insufficient, for this defendant can only be successful by showing that the absence of a particular class was caused by deliberate discrimination. The testimony in this case does not bear out this allegation (People v. Horton, 18 N Y 2d 355 [1966]: Fay v. New York, 332 U. S. 261 [1947]).
The defendant must be indicted by a fair and impartial Grand Jury. The Grand Jury which indicted this defendant was selected according to the methods established which secured to him a just and impartial administration of the jury system. There are no principles of law or even of morals which have been violated to the detriment of the defendant in this case in the selection of the grand jurors. The method used by the Commissioner of Jurors of this comity in- selecting at random the names of grand jurors from the list of petit jurors was not constitutionally offensive, nor did it violate any rights of this defendant as guaranteed by the Federal or gtate Constitutions.
There was no conniving or packing of the Grand Jury by any officials of the gtate or County which discriminated against the Negroes or poor people of Dutchess County. If this had occurred, the administration of justice in this county and the punishment of crime would have been discriminatory and public confidence would have been shaken in the administration of the jury system of this county.
Actually, the practice of selection of grand jurors in this county, pursuant to the testimony of the Commissioner of Jurors, has been at random principally through the use of the Dutchess County Tabulating Department. The petit jury was selected at random and the method of selecting those members from the registration rolls has been recognized by both the gtate and Federal courts (People v. Agron, 10 N Y 2d 130 [1961]; Brown v. Allen, 344 U. S. 443 [1953]). The grand jurors were selected mainly at random from the petit jury list with the addition of qualified citizens of this county who took the iniative to volunteer to serve on the Grand Jury. There has been no deliberate or systematic exclusion of Negroes or poor people to serve on the Grand Jury of this county, and this court finds that the statutes, the case law, as well as the -order of the Appellate Divi *139 "ion, Second Department, have been followed and have insured the defendant with a fair and impartial Grand Jury in this county. The court also finds the Commissioner of Jurors acted within the statutory scheme in selecting, as he did, Grand Jury members; moreover, it is the opinion of this court that he not only followed, but expanded upon the procedure as ordered by the Appellate Division of this Department, thereby giving greater weight to the fact that the selection thereof was unbiased.
The names on the Grand Jury list selected from the petit jury at random are a cross section of Dutchess County, and this court is satisfied there was no deliberate or systematic discrimination against any racial, economic or any other group.
The court finds, therefore, that the motion of this defendant has not been sustained by any showing of evidence sufficient to compel this court to dismiss the indictment. Accordingly, the motion is denied.