OPINION OF THE COURT
Richard C. Giardino, J.
The indictment in this case, which contains seven counts, charges defendant with the crimes of murder in the first degree, murder in the second degree, robbery in the first degree, criminal use of a firearm in the first degree and grand larceny in the fourth degree. The various charges stem from an incident which took place on February 23, 1998, involving the shooting death of one Joseph Boop, the driver of a taxicab in which defendant was the passenger. Defendant allegedly shot Boop twice with a shotgun after an altercation. The arraignment on the indictment took place on April 9, 1998, at which time defendant pleaded not guilty to all counts. Trial is scheduled to commence on October 13, 1998.
Defendant filed the instant motion on July 20, 1998, seeking various forms of relief. Defendant’s request for dismissal of the indictment and his request for court-ordered discovery of Brady material pursuant to CPL 240.40 are discussed below.[1] The People’s response was filed on August 24, 1998. On August 7, 1998, while this motion was pending, the District Attorney informed the court and counsel for defendant that she had decided not to seek the death penalty against defendant.
A. Dismissal of the Indictment
Defendant seeks dismissal of the indictment by alleging that the composition of the Grand Jury violated the Sixth Amendment to the United States Constitution. While not clearly stated in defendant’s motion papers, he also appears to invoke notions of due process and equal protection. Defendant begins with the requirement set forth by the United States Supreme Court in Taylor v Louisiana (419 US 522) that a jury be selected from a representative cross section of the community. The Taylor opinion also sets out the prima facie showing required of a defendant who challenges the composition of a jury:
(1) The group alleged to be excluded is a distinctive group within the community.
*597 (2) The representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of persons in the community.
(3) This underrepresentation is due to systematic exclusion of the group from the jury selection process.
The first of these requirements is common to challenges mounted under Sixth Amendment, due process and equal protection analyses (see, People v Guzman, 60 NY2d 403, 410, 412 [a due process attack requires a “substantial and identifiable segment of the community”, and an equal protection attack requires a showing of a “‘recognizable, distinct class’”]). It is also this first requirement which defeats defendant’s motion. The “sub-culture or subclass of citizens” alleged by defendant to be excluded from jury venires is described in his motion papers as follows: “This group [is] referred to by the other citizens of the community alternatively as ‘Bleeker [sic] People’, ‘Hicks’, ‘Hill People’ and other labels. Interviews of a large group of Fulton County Residents has shown that this segment is viewed with suspicion and commonly believed to be sexual deviates, of lower intelligence, lazy, shiftless, etc. Members of this class, hold no or menial jobs for the most part. They are impoverished or sustained by social security income, welfare and/or other public assistance. This group has a high rate of alcoholism, criminal histories and generally have been unsuccessful in schooling and have little education. There are claims of high incidents of physical abuse, sexual abuse and incest and mental disorders in this sub-culture. There [are] indications that members of this group are possibl[y] shunned by other members of the community or at least held in ridicule. It appears that members of this group remain identifiable even when they move to the more urban areas of the County.”
The People respond to this motion by arguing, among other things, that the group alleged by defendant “does not constitute a distinct and identifiable group or class of people [citing People v Mateo, 175 Misc 2d 192, 211-214].” The People further note that defendant offers no empirical data, but instead bases this contention on “investigation conducted by [counsel for defendant], mitigation experts and private investigators” and on “conversations with attorneys who practice in the Fulton County Community.”
The inclusion by defendant of the term “Bleecker People” in the list of epithets allegedly used to denote the subclass he describes has caused considerable controversy. Stories appearing in local newspapers and on local radio news broadcasts, as *598 well as on newscasts from at least two Albany television stations, have focused on this rather unfortunate term.
This court rejects out-of-hand the notion that residents of any particular geographic area of Fulton County are somehow inferior to other county residents. Moreover, it is worth noting parenthetically that census data shows the Town of Bleecker to have a higher percentage of residents with college degrees, and a lower percentage of residents living below the poverty line, than does Fulton County as a whole.
However, the particular reference to the Town of Bleecker in defendant’s motion papers is not the crux of his argument. A careful reading of defendant’s motion shows him to be attempting to describe an alleged subclass of county residents whose “common features” are the unenviable circumstances associated with poverty (see, e.g., 1996 Sourcebook, US Justice Dept, Bureau of Statistics [crime rates, both as to victims and perpetrators, are statistically higher among persons living below the poverty line]). It has previously been held specifically that poor people do not constitute a “distinct group within the community” for purposes of a jury challenge. While economic status varies within any community, membership in any particular economic stratum is changeable (People v Mateo, 175 Misc 2d 192, supra; People v Hale, 173 Misc 2d 140).
Although defendant has asked for a hearing on this motion, presumably to flesh out the allegations contained in his motion papers, his choice of a “subclass” specifically held not to constitute a recognizable group for purposes of challenging the makeup of a Grand Jury renders it impossible for him to make a factual showing in his motion papers that the Grand Jury was illegally selected, and thus deprives him of a right to a hearing (People v Ruppert, 53 Misc 2d 845). Defendant’s motion is denied.
B. Discovery Pursuant to CPL 240.40 and Brady v Maryland
Defendant seeks discovery by court order of two main bodies of material, disclosure of which was refused by the People in response to defendant’s demand to produce under CPL 240.20. First, defendant seeks disclosure of statements, Grand Jury testimony, police reports and other documents containing reference to defendant’s use of alcohol on the night of the alleged homicide. As intoxication can negate the intent element of first degree murder, defendant asserts that these are Brady material. Second, defendant seeks inspection of the physical evidence possessed by the People.
*599 At the outset, it appears that this portion of defendant’s motion was drafted prior to the compliance conference held in this matter on July 2, 1998. At that conference, counsel for both parties indicated on the record their agreement that defendant’s inspection of physical evidence would be arranged at a mutually convenient time. Defendant has made no allegation that the People have failed to live up to this agreement, so it appears that this issue is moot.
The legal argument submitted in the defense motion papers also mounts a broad constitutional attack on New York’s criminal discovery statutes. This argument, however, is well beyond the scope of the relief sought. The outcome of defendant’s motion does not turn on the constitutionality of the statute he invokes. The rule is well established in New York that courts will not decide constitutional questions unless, as a matter of clear necessity, the case requires it, i.e., the question is unavoidable and vital to the determination of the case itself (see, e.g., People v Carcel, 3 NY2d 327; People v Alston, 94 Misc 2d 89). Those portions of defendant’s motion papers raising constitutional challenges to New York’s criminal discovery statutes will not be addressed.
1. The Brady Test
The test for discovery of evidence set forth in Brady v Maryland (373 US 83) is well known. The United States Supreme Court held, that the prosecution has an affirmative duty to disclose evidence to the defense if that evidence is (a) favorable to the defense, (b) material to the question of guilt or punishment, and (c) in the possession of the People. As stated by the Court of Appeals, “New York has long recognized this prosecutorial duty” (People v Wright, 86 NY2d 591, 595, citing People v Savvides, 1 NY2d 554).
The first element of the test reveals a major disagreement between these parties. The source of their differing views can be traced to the use of the word “exculpatory” by the courts of this State as a shorthand description of evidence which meets the Brady test. Defendant makes a point of asking for all evidence that is “favorable” to the defense, while the People insist (both in their response to defendant’s demand to produce and on this motion) that only “exculpatory” evidence need be made available to defendant.
The legal definition of exculpatory is, “Clearing or tending to clear from alleged fault or guilt; excusing.” (Black’s Law Dictionary 508 [5th ed 1979].) The use of this term thus has *600 the potential for muddying what is a fairly clear test laid out in Brady. Evidence that is favorable to the defense and material to the issue of guilt or punishment may not rise to the level of being exculpatory. In People v Wright (supra), the evidence at issue concerned the former status of the complaining witness as a police informant. While the information was critical in that case, which turned on the credibility of the complaining witness and two police officers, it did not, in and of itself, exculpate the defendant. This court thus disagrees with the People that evidence must be exculpatory in order to meet the Brady test, and will not use that term in evaluating defendant’s request.
2. The Materials Sought
The defense motion refers to several fairly broad requests in defendant’s demands to produce seeking any manner of record (e.g., police report, note, memorandum, transcript, or written statement) which describes or relates to defendant’s consumption of alcohol or drugs, both in general and on the day of the alleged homicide. The People have noted correctly that they cannot turn over Grand Jury minutes on these subjects, as requested in the defense discovery demands, absent a written court order (CPL 190.25 [4]). In addition, the People note that they are compiling “a reference sheet for the defense which will contain exact quotes of any and all references [to] the defendant’s alleged intoxication at the time of the crime, during the investigation following the crime, or as to his background of alcohol use or abuse.” According to the People, this should satisfy their duty under Brady, absent the discovery of any other similar material.
3. Application of Brady
As discussed above, Penal Law § 125.27 defines the various circumstances giving rise to a charge of murder in the first degree. All of these various circumstances share a common element, which is set forth at the beginning of section 125.27 (1): “With intent to cause the death of another person”. Intoxication, if believed by the jury to be sufficiently proven, negates the intent element of first degree murder (1 CJI[NY] 9.46; see, e.g., People v Keller, 246 AD2d 828; People v Harris, 174 Misc 2d 654). Any admissible evidence bearing on defendant’s intoxication at the time of the alleged homicide, whatever form it may take (testimony, memoranda, investigator’s notes, etc.), is thus favorable to the defense.
*601 For the same reason, such evidence is also material to the issue of guilt. The test of materiality under Brady is stated two ways. The standard test for materiality is whether there exists a reasonable probability that its disclosure would change the ultimate outcome of the proceeding (People v Chin, 67 NY2d 22). In a “specific request” case, where disclosure of the disputed evidence is requested specifically by the defense, the standard is a more lenient one. There must be only a reasonable possibility that disclosure would change the outcome (People v Vilardi, 76 NY2d 67). The People argue that the very broad requests made by defendant are not sufficiently specific to invoke the “reasonable possibility” standard. Since evidence of intoxication, if believed by the jury, could negate an essential element of this crime, the court finds that evidence bearing on intoxication is material under either test.
Evidence need not be in the physical possession of the District Attorney’s office to be regarded as being “in the possession of the People”. The term has been held to include any law enforcement agency connected with the prosecution of the particular crime at issue (see, People v DaGata, 86 NY2d 40 [FBI lab notes]; People v Jackson, 154 Misc 2d 718 [data in Fire Marshall’s report bearing on cause of fire]). While the People have not argued the point strenuously on this motion, they have taken the position at a previous compliance conference that material not in the possession of the District Attorney’s office is not discoverable under Brady. Defendant has also made a specific request in this motion for an order that the District Attorney inquire of all participating law enforcement agencies in this case as to whether they might possess Brady material which must be disclosed.
This court is of the view that evidence bearing on the intoxication of defendant on the night in question, whatever form it may take, constitutes potential Brady material. While defendant has not set forth an inventory of the exact documents he seeks, the People are hereby directed to review all the evidence in their possession, and in the possession of any related law enforcement entities, and disclose to defendant any evidence that is Brady material as defined above. The People are hereby further directed to disclose to defendant those portions of the Grand Jury minutes which relate to defendant’s intoxication on the night in question.

. This decision was rendered upon defendant’s omnibus motion. Discussion of defendant’s remaining requests for relief have been omitted for purposes of publication.